270 N.J. Super. 55 (1994)
636 A.2d 553
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES BAKER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1993.
Decided January 21, 1994.
*60 Before Judges SKILLMAN, KESTIN and WEFING.
*61 Amy Gershenfeld Donnella, Designated Counsel, argued the cause for appellant (Zulima V. Farber, Public Defender, attorney; Ms. Donnella, of counsel and on the brief).
Robert Suarez, Prosecutor's Agent, argued the cause for respondent (Andrew K. Ruotolo, Union County Prosecutor, attorney; Steven J. Kaflowitz, Assistant Prosecutor, of counsel; Mr. Suarez, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was indicted together with codefendant Stephen L. Garry for second degree robbery, in violation of N.J.S.A. 2C:15-1; attempted kidnapping, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:13-1b; criminal restraint, in violation of N.J.S.A. 2C:13-2; kidnapping, in violation of N.J.S.A. 2C:13-1b, and aggravated sexual assault, in violation of N.J.S.A. 2C:14-2a. Pursuant to a plea bargain under which he agreed to testify against defendant, Garry pled guilty and was sentenced to a thirty year term of imprisonment, with fifteen years of parole ineligibility. The State also offered defendant a plea bargain under which he would be subject to a maximum term of thirty years, with fifteen years of parole ineligibility. However, defendant declined this offer and elected to go to trial.
A jury found defendant guilty of robbery, attempted kidnapping, kidnapping and aggravated sexual assault. The court dismissed the charge of criminal restraint. On December 4, 1987, the court sentenced defendant to concurrent nine year terms of imprisonment, with three years of parole ineligibility, for robbery and attempted kidnapping, and a consecutive eighteen year term of imprisonment, with eight years of parole ineligibility, for kidnapping. The court merged defendant's conviction for aggravated sexual assault into his conviction for kidnapping. Thus, the court originally sentenced defendant to an aggregate term of twenty-seven years imprisonment, with eleven years of parole ineligibility.
*62 Defendant filed a notice of appeal from his conviction on July 18, 1988, and this court entered an order on February 22, 1989, authorizing defendant's untimely notice of appeal to be filed nunc pro tunc. On August 21, 1989, the State filed a motion for leave to file a cross-appeal nunc pro tunc, contending that defendant's sentence for kidnapping was illegal. This motion was granted on September 12, 1989.
We rejected all of the arguments made by defendant and affirmed his conviction. State v. Baker, No. A-5384-87T4 (decided Jan. 2, 1990). However, on the State's cross-appeal we remanded to the trial court for reconsideration of the sentence:
On its cross-appeal, the State argues that, as to the Count Four first-degree kidnapping conviction, N.J.S.A. 2C:13-1c(2) requires a sentence "of 25 years during which the actor shall not be eligible for parole, or a specific term between 25 years and life imprisonment, of which the actor shall serve 25 years before being eligible for parole." That mandatory sentence, introduced into the statute by L. 1986, c. 172, § 2, is applicable
if the victim of the kidnapping is less than 16 years of age and if during the kidnapping:
(a) A crime under N.J.S. 2C:14-2 or subsection a. of N.J.S. 2C:14-3 is committed against the victim[.]
....
The offense here was committed in January 1987, the victim was apparently less than 16 years of age and the jury found she was the victim of an N.J.S.A. 2C:14-2 crime. It would thus appear that the mandatory sentence is applicable and that the sentence imposed by the trial judge is illegal. However, since defendant did not have the opportunity to be heard at sentencing as to any mandatory sentence, or as to how the remaining sentences should be structured if a mandatory sentence is imposed, we are reluctant to impose any mandatory sentence ourselves. We choose, rather, to remand the matter to the trial judge for reconsideration of the Count Four sentence in light of N.J.S.A. 2C:13-1c(2) and, in connection therewith, for reconsideration of the remaining sentences as well.
Defendant filed a motion for reconsideration of the part of our opinion remanding for reconsideration of his sentence. We denied this motion on February 27, 1990, but stated that the issues raised in the motion could be presented to the Law Division in connection with its reconsideration of defendant's sentence.
The Supreme Court denied defendant's petition for certification. State v. Baker, 122 N.J. 186, 584 A.2d 246 (1990).
*63 Defendant filed a petition for post-conviction relief on March 27, 1991, which alleged that he had been denied effective assistance of counsel because of defense counsel's failure to present certain exculpatory evidence at trial, and that he had been denied due process and equal protection of the law because the State had entered into a plea bargain with codefendant Garry under which Garry testified against defendant in exchange for an illegally short sentence. After an evidentiary hearing, the trial court denied defendant's petition on October 7, 1991.
On February 19, 1992, the trial court resentenced defendant pursuant to our remand to a twenty-five year term of imprisonment without eligibility for parole for kidnapping and concurrent nine year terms of imprisonment, with three year periods of parole ineligibility, for robbery and attempted kidnapping. The court also merged defendant's conviction for aggravated sexual assault into his conviction for kidnapping. Thus, defendant was resentenced to an aggregate term of twenty-five years imprisonment without eligibility for parole, which more than doubled the period of parole ineligibility imposed under his original sentence.
Defendant filed separate notices of appeal from the denial of his petition for post-conviction relief and his resentencing, which we consolidated.

I
Defendant argues that he was denied the effective assistance of counsel guaranteed by the United States and New Jersey Constitutions. To prevail on a claim of ineffective assistance of counsel, a defendant must show first that his counsel's performance was "deficient," that is, "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), and second, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at *64 698. In applying these tests, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. at 2052, 80 L.Ed.2d at 694. Our courts apply the same two-pronged test to a claim of ineffective assistance of counsel under Article I, paragraph 10 of the New Jersey Constitution. State v. Fritz, 105 N.J. 42, 53-58, 519 A.2d 336 (1987).
To place defendant's claims of ineffective assistance of counsel in context, it is necessary to summarize the testimony at trial. The State presented evidence that defendant and Garry were involved in separate attacks upon two female victims in Elizabeth during the evening of January 7, 1987. According to the victims, defendant was the operator and Garry the passenger in the car used in both attacks.
The first victim, Elizabeth Soto, testified that Garry jumped out of the car, grabbed her handbag and attempted to pull her into the car. However, she resisted and the assailants escaped with only her handbag. Soto tentatively identified defendant as the driver from a photographic array which she was shown a few weeks after the crime. She also positively identified defendant at trial.
The second victim, M.B., testified that Garry jumped out of the car, grabbed her and pulled her into the car. The car drove away and Garry sexually assaulted her sometime thereafter. According to this victim, defendant also attempted to sexually assault her but she bit him. M.B. identified defendant from a photographic array a few weeks after the crime and also identified him at trial.
Garry testified for the State that he and defendant jointly committed both assaults. However, Garry testified that he was the driver of the car and that defendant was the one who got out of the car and attacked both victims. Garry also testified that both he and defendant sexually assaulted M.B.
In addition, Detective Conrad Cheatham of the Elizabeth Police Department testified that defendant admitted participating in the assault upon Ms. Soto. According to Detective Cheatham, defendant *65 told him that he was the one who actually attacked Soto while Garry drove the car.
Defendant contends that his trial counsel's performance was deficient in a number of respects. First, defendant contends that his counsel should have introduced evidence that he was walking down the street with Garry when Soto, walking in the opposite direction, saw Garry and called the police, resulting in Garry's apprehension, but that she failed to recognize defendant as the other person involved in the assault. Defendant claims that such evidence would have undermined the credibility of Soto's assertion that she could not make a positive identification of defendant from his photograph but would be able to recognize him in person, and also would have undermined the reliability of Soto's identification of defendant in court nine months later.
At the hearing on defendant's petition for post-conviction relief, defense counsel acknowledged that defendant had requested him to present evidence of his face-to-face encounter with Soto, but that he decided it would be strategically inadvisable to present such evidence:
Mr. Baker's defense was that he hardly knew Mr. Stephen Garry. The place where he was with Miss Soto  with Mr. Garry on the date in question was in proximity to the location of the crime.
In addition to being in the proximity of the crime itself, since he indicated that he was not familiar with Mr. Garry, that places him with Mr. Garry about two to three weeks subsequent to the crime in the general vicinity of the crime.
So, strategically I didn't think that was a good thing to do, to bring before the jury two or three weeks subsequent to the crime Mr. Baker and Mr. Garry were still together, based on the fact he had indicated he was not very familiar with Mr. Garry.
At trial, defendant testified on direct examination:
Q. And how often would you say you have seen Steven Garry over that four and a half year period?
A. May see him once and then may not see him for two months.
Similarly, on cross-examination defendant testified:
Q. You knew each other. You weren't enemies?
A. No.
Q. Ever hang out together?

*66 A. No.
Q. Ever do things together?
A. Went to a party one time.
Q. One time?
A. Yeah.
Q. Ever do anything with him on any other occasions?
A. Dropped him off. He rode in my car about a year ago. Dropped him off.
Consequently, defense counsel could reasonably have been concerned that evidence showing that defendant was walking with Garry shortly after the crime would have undermined the credibility of defendant's trial testimony that he never "hung out" with Garry. Moreover, this evidence would have shown that defendant frequented the area where the crime was committed.
Defendant also contends that because his counsel refused to present evidence that he was present when Soto identified Garry, he was unable to testify that his description of the offense to Detective Cheatham was based on what Garry had told him at the time of that encounter. At trial, defendant testified:
What did you say to Detective Cheatham? That's what he's asking you.
A. I told him that Garry told me that he snatched the lady's pocketbook.
Q. And did you tell him where this occurred?
A. North Broad Street.
Defendant contends that this testimony would have been "far more plausible" if he had also been able to testify that he and Garry had seen Soto together, at which time Garry "bragged" to defendant "about what he had done." However, defense counsel could reasonably have concluded that the possible benefit of this testimony would have been outweighed by the opportunity it would have offered the prosecutor to cross-examine defendant regarding his relationship with Garry. Therefore, defense counsel's strategic decision not to elicit testimony from defendant that he was Garry's companion when Soto identified Garry did not constitute ineffective assistance of counsel.
Defendant argues that trial counsel was deficient because he failed to call as a witness Gerald Adams, who allegedly heard Garry say that defendant had not been Garry's accomplice *67 but that he was nonetheless going to testify against defendant to get the benefit of the plea bargain offered by the State. At the hearing on defendant's petition for post-conviction relief, defense counsel testified that Adams told him he had no first-hand information regarding Garry's statement exculpating defendant:
[W]hat Mr. Adams told me was all hearsay, it was what he had heard in the jail. He didn't hear Mr. Garry speak to him specifically. He overheard other people talking about Mr. Garry.
Defendant now challenges the credibility of this testimony because the same defense counsel also represented defendant at a trial on another charge held three-and-a-half weeks after this trial, during which Adams testified that Garry told him he had implicated defendant in the other offense to get the benefit of a plea bargain.
However, defendant did not cross-examine his trial counsel on this point at the hearing on his petition for post-conviction relief. Thus, defendant's trial counsel was never given the opportunity to explain the apparent inconsistency between his testimony at that hearing and his calling Adams as a witness at the other trial. Moreover, at the hearing on his petition for post-conviction relief defendant failed to present any evidence regarding Adams' testimony at the other trial. Therefore, this evidence was not presented to the trial court and is not properly before us. In any event, even if Adams had been called as a witness, his testimony apparently would have been the same as that already given by another witness, Marvin Grantham, and thus would have been cumulative. Therefore, defense counsel's failure to call Adams does not constitute an adequate basis for a finding of ineffective assistance of counsel.
Defendant also argues that because defense counsel was unaware that N.J.S.A. 2C:13-1c had been amended to require a twenty-five year period of parole ineligibility upon conviction for a kidnapping in which a sexual assault is committed upon a minor, he was unable to effectively cross-examine Garry regarding the benefits of the plea bargain he received in exchange for agreeing to testify against defendant. However, the direct examination of Garry elicited that he had entered into a plea bargain without *68 exploring the extent of the benefit from the bargain. It is pure conjecture whether the jury would have found Garry's testimony less credible if it had been made aware of the full extent of his sentencing exposure.
Defendant also argues that defense counsel's performance was deficient because he failed to call four potential alibi witnesses identified by defendant. However, two of those potential witnesses indicated to defendant's investigator that they could not provide testimony supportive of defendant's alibi, another could not be located and the fourth indicated an unwillingness to come to court. Although defense counsel could have issued a subpoena if this witness was in fact prepared to give testimony helpful to the defense, defendant failed to present any competent evidence at the hearing on his petition for post-conviction relief to show that this witness would have been able to provide defendant with an alibi. Therefore, we are unable to conclude that there is a reasonable probability the outcome of the trial would have been different if this witness had been subpoenaed. Strickland v. Washington, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Defendant also argues that his counsel's performance was deficient because he failed to cross-examine Detective Cheatham regarding his notarization of Garry's statement after Cheatham had testified that his interview of defendant was his only involvement with the case. Defendant argues that such cross-examination would have showed that Cheatham heard or read Garry's version of the assaults, which would have "raised the spectre that Cheatham had either fabricated defendant's `confession,' or that Cheatham had misheard petitioner as saying that he was the accomplice, rather than that he simply knew about the crime having been committed." Defense counsel indicated that he did not cross-examine Cheatham on this basis because he failed to notice Cheatham's notarization of Garry's statement.
We agree with defendant that there was no strategic reason for failing to use Cheatham's notarization of Garry's statement in cross-examination and that such cross-examination could have *69 possibly undermined Cheatham's credibility. However, we are unable to conclude that there is a reasonable probability the outcome of the trial would have been different if defense counsel had engaged in such cross-examination. Garry's statement shows on its face that it was taken by police officers other than Cheatham and that Cheatham only notarized the statement, which undoubtedly would have diluted the effectiveness of the cross-examination of Cheatham which defendant now contends his counsel should have undertaken.
Defendant also argues that his counsel was ineffective because he failed to point out in summation that the State failed to present any fingerprint evidence establishing defendant's presence in the vehicle used in the assaults. However, in view of the absence of fingerprints found in the car, the testimony against defendant by Soto, M.B. and Garry, as well as defendant's statement to Cheatham, there is no reasonable probability that this line of argument would have changed the outcome of the trial.
Defendant's other ineffective assistance of counsel arguments relating to the conduct of his trial involve matters of trial strategy within the discretion of defense counsel and are clearly without merit. R. 2:11-3(e)(2).

II
Defendant argues that his right to due process guaranteed by the Federal and State Constitutions was denied when the prosecutor promised, and the court accepted, a plea bargain with codefendant Garry requiring him to testify against defendant in exchange for an illegally short sentence.
The factual background of this argument is unusual. Under N.J.S.A. 2C:13-1c, the sentencing range for first degree kidnapping had been fifteen to thirty years, with no mandatory period of parole ineligibility. L. 1979, c. 178, § 23. However, on December 8, 1986, this section was amended by the enactment of Chapter 172 of the Laws of 1986 to provide that a person found guilty of *70 kidnapping a victim under sixteen against whom a sexual assault under N.J.S.A. 2C:14-2 or N.J.S.A. 2C:14-3a is committed shall be sentenced to a term between twenty-five years and life imprisonment, with twenty-five years of parole ineligibility. N.J.S.A. 2C:13-1c(2)(a). Since M.B. was under sixteen and was sexually assaulted during her kidnapping, and the offense was committed on January 7, 1987, nearly a month after the amendment of N.J.S.A. 2C:13-1c, Garry and defendant were both required upon conviction for M.B.'s kidnapping to be sentenced to a term of at least twenty-five years imprisonment without parole. However, the prosecutor, who was apparently unaware of the amendment to N.J.S.A. 2C:13-1c, offered Garry a plea bargain under which he would receive an aggregate sentence of no more than thirty years imprisonment, with fifteen years of parole ineligibility, conditioned upon Garry "testifying truthfully" against defendant. Garry accepted this plea offer and the trial court, also apparently unaware of the amendment to N.J.S.A. 2C:13-1c, sentenced Garry to an aggregate term of thirty years imprisonment, with fifteen years of parole ineligibility.[1] Pursuant to the plea bargain, Garry subsequently gave the previously summarized testimony at defendant's trial.
We agree with defendant's contention that since a trial court may not impose an illegal sentence, see State v. Copeman, 197 N.J. Super. 261, 265, 484 A.2d 1250 (App.Div. 1984), a prosecutor should not offer a plea bargain which may not be legally implemented. But it does not follow that a plea bargain involving an illegal sentence denies due process of law to a defendant against whom the person receiving the benefit of the bargain gives testimony. There is always a danger that an accused who is offered a plea bargain under which he will receive a reduced sentence in exchange for his testifying against another person will *71 give false testimony. Indeed, a defendant against whom such testimony is presented is entitled to a special instruction drawing the jury's attention to this risk. See State v. Artis, 57 N.J. 24, 33, 269 A.2d 1 (1970); State v. Begyn, 34 N.J. 35, 54, 167 A.2d 161 (1961). However, the risk of encouraging perjured testimony is substantially the same regardless of whether a plea offer involves a lenient legal sentence or a lenient illegal sentence.
We note in this regard that Garry's sentencing exposure would have substantially exceeded the sentence he actually received even if the sentencing provisions relating to kidnapping had not been amended. Garry was charged not only with kidnapping but also aggravated sexual assault, attempted kidnapping and second degree robbery. Therefore, if Garry had been found guilty of all charges, he could have been sentenced under prior law not only to the maximum term for kidnapping but also to a consecutive sentence for one or more of the other offenses. Defendant was of course free to elicit testimony regarding Garry's sentencing exposure during cross-examination, and the court noted in its instructions that in evaluating Garry's credibility the jury could consider "whether his testimony was influenced by the hope or expectation of any favorable treatment or reward." See generally State v. Long, 119 N.J. 439, 488-89, 575 A.2d 435 (1990). We further note that another witness, Marvin Grantham, testified that the maximum sentence for kidnapping is life imprisonment.
Thus, while the jury was not made aware that Garry received a sentence which failed to include a mandatory period of parole ineligibility, it undoubtedly understood that he had received a reduced sentence in exchange for agreeing to testify against defendant. Consequently, Garry's testimony against defendant under a plea bargain involving an illegal sentence did not deny defendant due process.

III
We turn next to the most difficult issue presented by this appeal. Defendant argues that his resentencing to the twenty-five *72 year term of imprisonment without eligibility for parole mandated by N.J.S.A. 2C:13-1c(2)(a) was fundamentally unfair and thus violated the Double Jeopardy Clauses and due process guarantees of the Federal and State Constitutions. Defendant's argument rests on the fact that his attorney never told him while he was considering a plea bargain offer from the State that he would be subject to a twenty-five year term of imprisonment without eligibility for parole if he were convicted of kidnapping. In addition, after defendant was convicted of various offenses, including the kidnapping of M.B., the trial court imposed a sentence which included only an eleven year period of parole ineligibility, and he served more than a year-and-a-half of that sentence before the State filed its motion for leave to file a cross-appeal nunc pro tunc challenging the trial court's failure to impose the statutorily mandated twenty-five year period of parole ineligibility. Defendant also relies on the fact that codefendant Garry received a sentence for M.B.'s kidnapping which included only a fifteen year period of parole ineligibility, and that the State has not taken any steps to correct that sentence.
Generally, jeopardy attaches once a defendant commences serving a term of imprisonment. State v. Ryan, 86 N.J. 1, 10, 429 A.2d 332, cert. denied, 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). Consequently, a defendant who has begun to serve a sentence ordinarily may not be resentenced to an increased term, including any increase in a period of parole ineligibility. See State v. Cruz, 125 N.J. 550, 559-63, 593 A.2d 1169 (1991). However, if the original sentence imposed upon a defendant is illegal, the sentence may be corrected at any time, even if this requires an increase in the term of imprisonment. Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947); State v. Kirk, 243 N.J. Super. 636, 641-45, 581 A.2d 115 (App.Div. 1990); State v. Sheppard, 125 N.J. Super. 332, 336, 310 A.2d 731 (App.Div.), certif. denied, 64 N.J. 318, 315 A.2d 407 (1973).
Defendant does not directly challenge the line of cases which hold that a court's obligation to correct an illegal sentence constitutes *73 an exception to the general rule that jeopardy attaches when a defendant begins to serve his sentence and that the term may not be increased thereafter. Rather, defendant contends that the erroneous advice given him by his trial counsel, the sentencing of codefendant Garry to a term which did not include the mandatory period of parole ineligibility, and the State's delay of more than a year-and-a-half in challenging his sentence, created "a real expectation of the finality of the sentence he was serving." Defendant claims that under these circumstances the trial court violated his rights under the Due Process and Double Jeopardy Clauses of the Federal and State Constitutions.
Insofar as defendant's argument rests upon the United States Constitution, it has no support in decisions of the Supreme Court of the United States or the lower federal courts. In Bozza v. United States, supra, the trial court inadvertently failed to impose a statutorily mandated fine in sentencing defendant, but subsequently recalled defendant to impose the omitted fine. In rejecting defendant's contention that this resentencing constituted a violation of the Double Jeopardy Clause, the Court stated:
This Court has rejected the "doctrine that a prisoner, whose guilt is established, by a regular verdict, is to escape punishment altogether, because the court committed an error in passing the sentence." The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court "only set aside what it had no authority to do and substitute[d] directions required by the law to be done upon the conviction of the offender. It did not twice put petitioner in jeopardy for the same offense. The sentence, as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.
[Id. at 166-67, 67 S.Ct. at 649, 91 L.Ed. at 822 (citations omitted).]
The Court reaffirmed Bozza in United States v. DiFrancesco, 449 U.S. 117, 134, 101 S.Ct. 426, 436, 66 L.Ed.2d 328, 344 (1980), noting that "a sentence does not have the qualities of constitutional finality that attend an acquittal." The Court went on to explain:
The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. Congress has established many types of criminal sanctions under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even for life, yet these sanctions have not been *74 considered to be violative of the Clause.... [Defendant's] legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked.
... North Carolina v. Pearce and Bozza v. United States demonstrate that the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase.
[Id. at 137, 101 S.Ct. at 437-38, 66 L.Ed.2d at 346.]
The lower federal courts have read Bozza and DiFrancesco to allow the imposition of an increased sentence to correct an illegal sentence in a variety of situations, without suggesting any specific limits to this judicial authority. See, e.g., United States v. Edmonson, 792 F.2d 1492, 1496-97 (9th Cir.1986) (correction and increase of an illegally imposed sentence already served by defendant held to be constitutional), cert. denied, 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987); United States v. Crawford, 769 F.2d 253, 256-57 (5th Cir.1985) (imposition of a jail term upon correction of an illegal sentence held to be constitutional even though the defendant had not been subject to incarceration under illegal sentence), cert. denied, 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986); Rolling v. Grammer, 665 F. Supp. 780 (D.Neb. 1987) (increase in habitual offender's illegal sentence of 9 to 12 years to legal sentence of 20 years held to be constitutional), aff'd, 845 F.2d 1028 (8th Cir.), cert. denied, 486 U.S. 1034, 108 S.Ct. 2020, 100 L.Ed.2d 607 (1988). But cf. Breast v. Helgemoe, 579 F.2d 95, 101 (1st Cir.) (expressing in dictum the court's "concern that the power of a sentencing court to correct even a statutorily invalid sentence must be subject to some temporal limit"), cert. denied, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978). Consequently, we find no basis in federal case law to conclude that a twenty month delay by the government in seeking to correct an illegal sentence, or any of the other equitable considerations relied upon by defendant, forecloses a court from imposing a statutorily mandated sentence.
We consider next whether New Jersey law prohibits the increase of a sentence to impose a statutorily mandated minimum term. In State v. Laird, 25 N.J. 298, 306, 135 A.2d 859 (1957), the Court recited with apparent approval the common law rule that *75 "[w]here the sentence was illegal, the court which rendered the judgment could not vacate it or render judgment anew after the term at which it was pronounced had ended or the judgment had been executed and the punishment partly borne." The Court noted that R.R. 8:7-11 provided that "the court ... `may correct an illegal sentence at any time,'" but concluded that the rule "was not designed to authorize an enlargement of the punishment after the sentence imposed had been satisfied and the defendant discharged." Id. at 307, 135 A.2d 859. See also State v. Ryan, supra, 86 N.J. at 11, 429 A.2d 332; State v. Matlack, 49 N.J. 491, 501, 231 A.2d 369, cert. denied, 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967).
Although Laird could be read to prohibit any increase in a sentence, even an illegal one, once a defendant has begun serving the sentence, our more recent cases have taken essentially the same approach as the federal courts and not only permit, but require, an illegal sentence to be corrected, even if this involves an increase in the aggregate sentence. Thus, in State v. Andrews, 105 N.J. Super. 62, 66, 251 A.2d 141 (App.Div. 1969), remanded on other grounds sub. nom., State v. Horne, 56 N.J. 372, 267 A.2d 1 (1970), we stated that:
It would subvert public policy to an intolerable degree and serve no fair interest of the defendant in freedom from double jeopardy to preclude the correction of the unauthorized maximum term in the sentence of commitment so as to substitute therefor the only commitment term the court was authorized, and, indeed, required to enter.
In State v. Sheppard, supra, we stated:
We can conceive of no consideration of basic fairness to, or of constitutional rights of, a criminal defendant which would argue against the right of the State to vindicate a statutory sentencing policy by pursuing timely appellate review of an illegal sentence  one beyond the jurisdiction of the sentencing tribunal.
[125 N.J. Super. at 338, 310 A.2d 731.]
Similarly, in State v. Heisler, 192 N.J. Super. 586, 592, 471 A.2d 805 (App.Div. 1984), we stated:

*76 It is well established that a court is free to vacate an illegal sentence and impose a sentence mandated by law, even when the mandatory sentence is greater than the original illegal sentence.
And in State v. Kirk, supra, 243 N.J. Super. at 643, 581 A.2d 115, we held that "so long as the issue of defendant's sentence is properly before the court, the court may correct an illegal sentence, even by increasing the term." See also State v. Flores, 228 N.J. Super. 586, 596 n. 2, 550 A.2d 752 (App.Div. 1988), certif. denied, 115 N.J. 78, 556 A.2d 1220 (1989); State v. Copeman, supra, 197 N.J. Super. at 263-65, 484 A.2d 1250 (App.Div. 1984); In re Nicholson, 69 N.J. Super. 230, 174 A.2d 204 (App.Div. 1961).
The courts in other states also recognize a court's authority to correct an illegal sentence at any time, even though the imposition of a lawful term involves an increase in a defendant's aggregate sentence. See, e.g., State v. Fry, 61 Haw. 226, 602 P.2d 13 (1979); Commonwealth v. Jones, 520 Pa. 385, 554 A.2d 50 (1989); Lerner v. Gill, 463 A.2d 1352 (R.I. 1983); State v. Babbel, 813 P.2d 86 (Utah 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992); see generally, Lee R. Russ, Jr., Annotation, Power of Court to Increase Severity of Unlawful Sentence  Modern Status, 28 A.L.R.4th 147 (1984).
We see no reason to depart from this line of cases in the present context. What is involved here is the judicial obligation to enforce a legislatively mandated period of parole ineligibility. See State v. Jefimowicz, 119 N.J. 152, 162, 574 A.2d 428 (1990); State v. Des Marets, 92 N.J. 62, 80, 455 A.2d 1074 (1983). A month before defendant kidnapped and sexually assaulted M.B., the Legislature directed that any person who commits these offenses upon a minor should serve at least a twenty-five year term of imprisonment without parole. We would frustrate this legislative directive if we were to conclude that defendant may avoid the statutorily required minimum sentence because the trial court, unaware of the recent legislative amendment, initially failed to impose the mandated period of parole ineligibility, and the prosecuting authorities, also unaware of the amendment, failed to challenge the sentence for more than a year-and-a-half. Under these circumstances, we *77 conclude that even if defendant had a subjective expectation of the finality of his original sentence, it would not be a "legitimate" expectation entitled to protection under the Double Jeopardy Clauses of the State and Federal Constitutions because it would be inconsistent with the statutorily mandated minimum sentence. For essentially the same reason, we disagree with our dissenting colleague's view that the trial court was precluded from imposing the statutorily mandated period of parole ineligibility based on considerations of "fundamental fairness" and "due process."
Moreover, defendant's own appeal prevented his convictions and sentences from being invested with finality. See State v. Rodriguez, 97 N.J. 263, 271, 478 A.2d 408 (1984) ("Since the underlying substantive convictions in this case were themselves the subject of attack on an appeal in which defendant sought their modification, no legitimate expectation of finality could be invested in the underlying convictions or the sentences related to them."). Defendant's appeal conferred authority upon this court to review his sentence, see State v. Kirk, supra, 243 N.J. Super. at 643-45, 581 A.2d 115, as did the State's cross-appeal challenging the trial court's improper exercise of its sentencing jurisdiction. State v. Sheppard, supra, 125 N.J. Super. at 338-39, 310 A.2d 731. And even if defendant's sentence had not been challenged, defendant had to be aware that if he succeeded in setting aside his conviction on appeal and was again convicted after a retrial, he could receive a longer sentence upon resentencing. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Thus, if the trial court had been made aware of the mandatory minimum sentence required by N.J.S.A. 2C:13-1c(2)(a) before resentencing defendant, it could not have been compelled to reimpose an illegal sentence simply because that sentence had been mistakenly imposed after defendant's first trial. We do not believe that the trial court's responsibility to impose the statutorily mandated sentence should be more limited simply because defendant was unsuccessful in his original appeal.

*78 IV
Finally, defendant argues that there was an unconstitutional disparity between the sentence imposed upon him at resentencing and the sentence previously imposed upon codefendant Garry. We recognize that neither state nor federal equal protection guarantees permit a "person ... [to] be subject to a greater or different punishment for an offense than that to which others of the same class are subjected." State v. Smith, 58 N.J. 202, 206, 276 A.2d 369 (1971). However, the sentence ultimately imposed upon defendant was only the statutorily mandated minimum. Consequently, the trial court could have remedied the disparity between defendant's and Garry's sentences only by correcting Garry's illegal sentence  it was powerless to impose a lesser sentence on defendant.[2] Moreover, there were significant differences in the status of defendant's and Garry's cases. Garry entered into a negotiated plea with the State and did not appeal while defendant appealed both his conviction and sentence. The disparate sentences ultimately received by Garry and defendant directly flowed from this difference in the procedural courses of their cases rather than any invidious or arbitrary action by the prosecutor or the court. Therefore, the fact that defendant's present sentence is longer than Garry's does not constitute a denial of the equal protection guarantees of the state or federal constitutions. See State v. Sutton, 80 N.J. 110, 121-22, 402 A.2d 230 (1979); cf. North Carolina v. Pearce, supra, 395 U.S. at 722-23, 89 S.Ct. at 2079, 23 L.Ed.2d at 667-68 (rejecting the argument that "since convicts who do not seek new trials cannot have their sentences increased, it creates an invidious classification to impose that risk only upon those who succeed in getting their original convictions set aside"); State v. Lee, 235 N.J. Super. 410, 415-16, 563 A.2d 51 (App.Div. 1989) ("[T]he fact that one defendant may *79 have received a lenient sentence unappealable by the State ... does not mean that a co-defendant's appropriate sentence becomes assailable or subject to modification by this court on appeal.").
Affirmed.
KESTIN, J.A.D., dissenting.
I agree that the specific instances of trial counsel's conduct or failure to act do not, singly or cumulatively, amount to ineffective assistance by the tests established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), adopted in State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987), to govern the application of article 1, paragraph 10 of the New Jersey Constitution. Therefore, in respect of defendant's appeal from the denial of his petition for post-conviction relief, there is no reason to overturn his conviction. An aspect of the ineffective assistance of counsel issue, however, bears upon defendant's assertion that he has been denied due process of law by reason of the sentence imposed.
In another case involving resentencing, we observed:
This court has previously held that "[d]ue process in its constitutional sense is little more than a metonym for fair play. State v. Haber, 132 N.J.L. 507, 512, 41 A.2d 326 (Sup.Ct. 1945). It connotes fundamental fairness." State v. Laganella, 144 N.J. Super. 268, 284, 365 A.2d 224 (App.Div.), appeal dismissed, 74 N.J. 256, 377 A.2d 652 (1976).
[State v. Heisler, 192 N.J. Super. 586, 593, 471 A.2d 805 (App.Div. 1984).]
Although it is clear as a doctrinal matter that an illegal sentence may always be corrected, the features of a particular case may dictate otherwise. Due process claims are fact and circumstance sensitive.
What due process requires in one situation may not be required in another, and this, of course, because the least change of circumstances may provide or eliminate fundamental fairness.
[Crooker v. California, 357 U.S. 433, 442 n. 6, 78 S.Ct. 1287, 1292 n. 6, 2 L.Ed.2d 1448, 1455 n. 6 (1958), overruled on other grounds, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).]
A combination of factors in this case, unlikely to recur in any other, suggests this defendant has not been dealt with fairly.
*80 No one involved at the time of trial, neither defendant nor his attorney nor the prosecutor  not even the judge, was aware of a recent change in law requiring a defendant convicted of kidnapping a victim less than sixteen years of age and committing a sexual assault upon the victim to serve a minimum term of twenty-five years without parole eligibility. N.J.S.A. 2C:13-1c(2). This amendment became effective one month before defendant committed the instant offense, nine months before trial commenced, and a year before sentencing. Because of the unknown factor, defendant had no opportunity to consider a plea offer from the State in the light of the actual risks involved in rejecting it. Defendant had been offered a comprehensive plea agreement that involved a thirty-year sentence with fifteen years of parole ineligibility. His attorney advised him mistakenly that he was subject to conviction for a first degree crime with a prison term of fifteen to thirty years. With this erroneous information, defendant made a choice to take his chances at trial.
Even at the time of sentencing three months later, the shared ignorance of the mandated sentence persisted, and defendant was sentenced for kidnapping to eighteen years with eight years of parole ineligibility. The conviction for aggravated sexual assault was merged with the kidnapping conviction. A consecutive sentence for robbery of the other victim resulted in an aggregate prison term of twenty-seven years with eleven years of parole ineligibility.
Only after defendant filed his appeal did the State discover the mistake that had been made. A motion for leave to file a cross-appeal out of time was granted. On appeal, we acknowledged the error, vacated the sentence and remanded for resentencing so that defendant might "have the opportunity to be heard at sentencing as to any mandatory sentence, or as to how the remaining sentences should be structured if a mandatory sentence is imposed...." State v. Baker, No. 5384-87T4 (App.Div. Jan. 2, 1990). On remand, the trial court imposed a sentence of twenty-five years without parole eligibility as mandated by statute for this *81 kidnapping, and the sentences for the remaining offenses were ordered to run concurrently. Thus, while defendant's overall aggregate sentence was reduced from twenty-seven to twenty-five years, his mandatory term was more than doubled, from eleven years to twenty-five years.
The co-defendant, however, had entered into a plea agreement. He received a thirty-year sentence with fifteen years of parole ineligibility in exchange for his testimony against defendant and a plea of guilty to first degree kidnapping and first degree aggravated sexual assault upon a victim less than sixteen years of age, as well as robbery, criminal restraint, and attempted kidnapping in respect of the other victim. The record before us does not disclose whether the co-defendant was aware of the recent enactment of a higher mandatory term of imprisonment. It appears, however, that the State has not sought to vacate the sentence imposed under that plea agreement on the grounds of its illegality. See, e.g., State v. Copeman, 197 N.J. Super. 261, 484 A.2d 1250 (App.Div. 1984).
Although bearing upon his conviction rather than the sentence, another aspect of defendant's ineffective assistance of counsel argument should be noted. In it, defendant contends, that his trial attorney's ignorance of the amendment to N.J.S.A. 2C:13-1 precluded an effective cross-examination of the co-defendant on the basis that he had received an illegally low sentence in exchange for his testimony against defendant. The error also precluded an argument to the jury that a sentence so divergent from the required norm was an incentive to commit perjury.
It is of no little significance that, until defendant's first appeal, the State was apparently unaware of the error that led to the imposition of illegal sentences upon this defendant and his co-defendant. The State's motion for leave to cross-appeal the sentence was not filed until more than a year had expired after defendant's notice of appeal had been filed, and twenty months after sentence had been imposed and defendant began serving his prison term.
*82 There appears to be no specific rule of law affording defendant the relief he seeks. I read the precedents to mean what my colleagues say they mean. Nevertheless, the concept of fundamental fairness trumps rules of law. That concept is designed to assure that due process values govern the outcome of criminal matters even "when the scope of a particular constitutional protection has not been extended to protect a defendant." State v. Koedatich, 118 N.J. 513, 528, 572 A.2d 622 (1990) (quoting State v. Yoskowitz, 116 N.J. 679, 705, 563 A.2d 1 (1989)). However sparing its application should be, see Yoskowitz, supra, 116 N.J. at 712, 563 A.2d 1 (Garibaldi, J., concurring in part and dissenting in part), the concept of fundamental fairness must be available for use when the result required by technisms does not square with considerations of decency and fair play. Cf. State v. Currie, 41 N.J. 531, 539, 197 A.2d 678 (1964).
The due process concepts embodied in article 1, paragraph 1 of the New Jersey Constitution are no less protective than those which emanate from the Fifth and Fourteenth Amendments to the federal Constitution. As described by the United States Supreme Court, due process of law comprehends concepts less rigid and more fluid than those envisaged in specific and particular constitutional guarantees.
Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial. In the application of such a concept there is always the danger of falling into the habit of formulating the guarantee into a set of hard and fast rules the application of which in a given case may be to ignore the qualifying factors therein disclosed.
[Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595, 1602 (1942).]
See also Gideon v. Wainwright, 372 U.S. 335, 339, 83 S.Ct. 792, 793-94, 9 L.Ed.2d 799, 802 (1963) which overruled the result reached in Betts v. Brady, without disavowing this conceptualization.
*83 Given the unusual confluence of events and circumstances in this case, I conclude that it is fundamentally unfair to impose the mandatory minimum sentence of N.J.S.A. 2C:13-1c(2) upon this defendant. The fact that every participant in the trial was unaware of the amended statute led to erroneous advice by defendant's trial attorney which deprived defendant of a full understanding of the benefits of the offered plea agreement. The same ignorance led the court to impose an illegal sentence upon defendant. Defendant began serving the term, albeit while appealing both the conviction and the sentence. The State did not move to appeal the illegal sentence for twenty months. The modified sentence ultimately imposed on defendant provides for a mandatory prison term more than twice as long as initially ordered. The co-defendant was also given an illegal sentence in the same range as that imposed on defendant and the State has taken no steps to correct that sentence. Indeed, such an effort might have come to naught at so late a date for any of several reasons, not only in respect of the co-defendant but also regarding this defendant if he had chosen, with the benefit of correct advice from his attorney, to accept the plea bargain that had been offered.
I also agree with the majority that, by existing criteria, the inequality of treatment between defendant and the co-defendant cannot be seen as an equal protection violation; nor can the long delay between imposition of the original sentence and the State's motion for leave to file a notice of appeal nunc pro tunc be seen as violative of established standards for determining whether defendant has been subjected to double jeopardy. Notwithstanding the inapplicability of precise tests governing the concepts of equal protection and double jeopardy, the factors relied upon in these connections, along with the other defects in this case, lead me to conclude that application of the mandatory term prescribed in N.J.S.A. 2C:13-1c(2) to this defendant in the circumstances presented would be fundamentally unfair, violating important underlying values of decency and fair play, and therefore denying this defendant due process of law. As once noted in a different context:

*84 No single one of those circumstances alone would in my opinion justify a reversal. I cannot escape the conclusion, however, that in combination they bring the result below the Plimsoll line of "due process."
[Fikes v. Alabama, 352 U.S. 191, 199, 77 S.Ct. 281, 285, 1 L.Ed.2d 246, 252 (1957) (Frankfurter, J., concurring).]
I would, accordingly, reverse and remand for resentencing.
NOTES
[1] Since the record before us does not include a copy of Garry's judgment of conviction, we do not know whether he was sentenced to the full length of this sentence for kidnapping, or whether he received a lesser term for kidnapping which was to be served consecutively to other portions of his sentence.
[2] Since the issue is not before us, we express no opinion regarding the State's authority, or responsibility, to seek correction of the illegal sentence imposed upon Garry. Cf. State v. Nemeth, 214 N.J. Super. 324, 327, 519 A.2d 367 (App.Div. 1986) ("[T]here can be no plea bargain to an illegal sentence.").