751 A.2d 141 (2000)
331 N.J. Super. 92
STATE of New Jersey, Plaintiff-Respondent,
v.
Paul Raymond HORTON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 29, 2000.
Decided May 19, 2000.
Edward J. Crisonino, Cherry Hill, for defendant-appellant.
Christine A. Hoffman, Assistant Prosecutor, for plaintiff-respondent (Robert D. Bernardi, Burlington County Prosecutor, attorney; Ms. Hoffman, of counsel and on the brief).
Before Judges BROCHIN, EICHEN and WECKER.
The opinion of the court was delivered by BROCHIN, J.A.D.
On September 21, 1995, defendant Paul Raymond Horton pleaded guilty pursuant to a plea agreement to a one-count accusation which charged him with third-degree endangering the welfare of a child (N.J.S.A. 2C:24-4(a)). In providing the factual basis for his plea, defendant, who was then sixty-nine years old, testified that he had touched a girl who was under the age of sixteen in the area of her breasts for the purpose of sexually gratifying himself.
The assistant prosecutor who appeared for the State described the plea agreement with defendant as follows:

*142 [I]n exchange for waiver of indictment and plea of guilty to that ... one count accusation, it's the State's recommendation that the defendant be sentenced to 364 days in the Burlington County Jail to be served on weekends and also to be placed on probation. The terms and conditions of which would be in ... the sentencing Court's discretion.
This sentencing recommendation is the same as that stated in the plea form signed by defendant. In response to questions from the judge who took defendant's plea, defendant acknowledged he understood that his plea would subject him to imprisonment for up to five years, to a fine of up to $25,000, and to "certain other requirements that may be imposed upon you by what is commonly known as the Megan's law," including the requirement "to register with the Burlington County Prosecutor's Office." The judge asked defendant's attorney whether he had "go[ne] through this" with defendant. After the attorney assured the court, "Yes, we did," the colloquy between the court and defendant continued as follows:
Q. You understand you're going to have to register?
A. Yes, I understand that.
Q. All right. And that once you have registered, the Prosecutor's Office will make a determination of what level of notification, if any, is necessary?
A. Yes.
Q. And that depending upon what level of ... notification is necessary, it's possible that community groups and other public notice may be given?
A. Yes.
Q. And do you also understand that once the Prosecutor's Office has made that determination, you are entitled to ask for a hearing on whether the determination is appropriate and proper?
A. Yes.
Q. And that you may, in fact, be subject to community supervision?
A. Yes.
Defendant was sentenced on January 12, 1996. The judgment of conviction entered on January 12, 1996, reads as follows:
Defendant is sentenced to Probation for a period of two (2) years with the following conditions:
Defendant shall serve 180 days on weekends in the Burlington County Jail; credit of 2 days;
Defendant to continue counseling with Ken Singer, LCSW until Mr. Singer feels no longer needed; defendant to follow all recommendations;
Defendant is to have no unsupervised contact with children under the age of 16 yrs.
No transcript of the sentencing has been furnished to us.[1]
Defendant completed his counseling with Mr. Singer on August 20, 1997. He finished serving his jail time on September 30, 1995, and his probation on January 12, 1998.
On April 15, 1997, the chairperson of the State Parole Board wrote the sentencing judge requesting the court to "advise whether the sentence imposed by you was required to include a special sentence of community supervision for life pursuant to N.J.S.A. 2C:43-6.4"[2] because defendant *143 had committed his sexual offense after October 31, 1994, the effective date of that statute. Letters from the Parole Board to the sentencing judge dated July 17, 1997, October 30, 1997,[3] January 22, 1998, and July 21, 1998, reiterated the request.
By a notice of motion dated July 24, 1997, the prosecutor moved to amend defendant's judgment of conviction "to reflect the imposition of community supervision for life." Defendant cross-moved to set aside his plea agreement if the State's motion to amend the judgment was granted. The motions were argued July 29, 1997. No decision was announced until January 25, 1999, when the sentencing judge issued a letter opinion which directed amendment of the judgment of conviction to include a provision of community supervision for life. No mention was made of defendant's conditional cross-motion to withdraw his guilty plea. However, the implication of the court's opinion is that the cross-motion was denied. An amended judgment of conviction was entered on January 27, 1999, reiterating the previously imposed provisions of defendant's sentence and, in addition, sentencing him to community supervision for life.
Defendant has appealed. He argues that "[n]o court rule allows for amending a sentence eighteen months after it is entered to impose a term of lifetime parole"; "[p]lacing the defendant on parole for life violates double jeopardy"; and "[t]he defendant should have been allowed to withdraw his guilty plea."
We agree with the State that a court has the inherent power to correct an illegal sentence even though there is no rule expressly authorizing it. See State v. Jurcsek, 247 N.J.Super. 102, 111 n. 3, 588 A.2d 875 (App.Div.), certif. denied, 126 N.J. 333, 598 A.2d 891 (1991); State v. Kirk, 243 N.J.Super. 636, 643, 581 A.2d 115 (App.Div.1990); State v. Paladino, 203 N.J.Super. 537, 549, 497 A.2d 562 (App. Div.1985). We turn, therefore, to the questions whether, in the particular circumstances of this case, the exercise of that power to impose community supervision for life is prohibited by considerations of double jeopardy or of fundamental fairness. The following cases shed light on that issue.
In State v. Baker, 270 N.J.Super. 55, 636 A.2d 553 (App.Div.), aff'd o.b., 138 N.J. 89, 648 A.2d 1127 (1994), Baker was convicted of robbery, attempted kidnaping, kidnaping, and aggravated sexual assault. One month before Baker committed these crimes, an amendment of the kidnaping statute increased the sentence to twenty-five years' imprisonment without parole eligibility or a specific term between twenty-five years' imprisonment and imprisonment for life, with twenty-five years of parole ineligibility, if the victim suffered a sexual assault during the kidnaping and was less than sixteen years old. Baker's victim was less than sixteen years old. But, the amendment was not called to the attention of the sentencing judge. He sentenced Baker to an aggregate term of twenty-seven years' imprisonment with eleven years' parole ineligibility. Baker appealed his conviction. His notice was late, but we granted leave to appeal nunc pro tunc. Thirteen months later, the State moved for leave to file an out-of-time cross-appeal from the illegal sentence and we granted its motion. In an unreported opinion, we affirmed defendant's conviction *144 and remanded the case to the Law Division for re-sentencing according to the amended statute. On remand, Baker was sentenced to an aggregate term of twenty-five years' imprisonment without eligibility for parole. His motion for post-conviction relief on the ground of inadequate assistance of counsel was denied. He appealed to us from that denial and from the re-sentencing, arguing that the twenty-five year term of imprisonment without parole eligibility, which more than doubled the term of parole ineligibility originally imposed, violated the double jeopardy clauses and the due process guarantees of the Federal and State Constitutions. We affirmed.
We summarized the applicable law as follows:
Generally, jeopardy attaches once a defendant commences serving a term of imprisonment. State v. Ryan, 86 N.J. 1, 10, 429 A.2d 332, cert. denied, 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). Consequently, a defendant who has begun to serve a sentence ordinarily may not be resentenced to an increased term, including any increase in a period of parole ineligibility. See State v. Cruz, 125 N.J. 550, 559-63, 593 A.2d 1169 (1991). However, if the original sentence imposed upon a defendant is illegal, the sentence may be corrected at any time, even if this requires an increase in the term of imprisonment. Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947); State v. Kirk, 243 N.J.Super. 636, 641-45, 581 A.2d 115 (App.Div.1990); State v. Sheppard, 125 N.J.Super. 332, 336, 310 A.2d 731 (App.Div.), certif. denied, 64 N.J. 318, 315 A.2d 407 (1973).
[State v. Baker, supra, 270 N.J.Super. at 72, 636 A.2d 553.]
See also United States v. DiFrancesco, 449 U.S. 117, 134, 101 S.Ct. 426, 436, 66 L.Ed.2d 328, 344 (1980) ("[A] sentence does not have the qualities of constitutional finality that attend an acquittal.").
We stated, "[W]e find no basis in federal case law to conclude that a twenty month delay by the government in seeking to correct an illegal sentence ... forecloses a court from imposing a statutorily mandated sentence," State v. Baker, supra, 270 N.J.Super. at 74, 636 A.2d 553, and we ruled that New Jersey law was also no bar to increasing Baker's sentence. Id. at 74-76, 636 A.2d 553. In language that is applicable to the present case, we said:
We would frustrate this legislative directive [to impose the more severe sentence] if we were to conclude that defendant may avoid the statutorily required minimum sentence because the trial court, unaware of the recent legislative amendment, initially failed to impose the mandated period of parole ineligibility, and the prosecuting authorities, also unaware of the amendment, failed to challenge the sentence for more than a year-and-a-half. Under these circumstances, we conclude that even if defendant had a subjective expectation of the finality of his original sentence, it would not be a "legitimate" expectation entitled to protection under the Double Jeopardy Clauses of the State and Federal Constitutions because it would be inconsistent with the statutorily mandated minimum sentence.
[Id. at 76-77, 636 A.2d 553.]
Our Supreme Court affirmed on the basis of this court's majority opinion.[4]State v. Baker, 138 N.J. 89, 648 A.2d 1127 (1994).
In State v. Eigenmann, 280 N.J.Super. 331, 655 A.2d 452 (App.Div.1995), we affirmed the increase of a defendant's sentence after he had finished serving the *145 illegal sentence originally imposed. Eigenmann was found guilty of first-degree aggravated sexual assault, simple assault and third-degree terroristic threats. He was sentenced as a young adult offender (N.J.S.A. 2C:43-5) to twenty-eight months' confinement. The State appealed, contending that the sentences were illegal. In an unreported opinion, we agreed with the State, holding that the court could not lawfully impose less than five-year indeterminate terms on the first- and third-degree convictions, and we remanded the case for re-sentencing. Id. at 334, 655 A.2d 452. When the matter ultimately came before a Law Division judge for resentencing, Eigenmann had fully served his twenty-eight month sentence. Ibid.
He argued to the sentencing judge that double jeopardy barred any additional time and, alternatively, that any additional aggregate sentence could not exceed five years. The sentencing judge, however, sentenced him as an adult to concurrent fifteen-year terms. Citing State v. Baker, supra, 270 N.J.Super. at 74-77, 636 A.2d 553, we declared that Eigenmann was "in no position to dispute that his illegal 28-month sentence could be increased after he had begun serving that term." State v. Eigenmann, supra, 280 N.J.Super. at 337, 655 A.2d 452. We held that, although an erroneous exercise of sentencing discretion could not be corrected to a defendant's disadvantage after he had begun serving his sentence, id. at 339, 655 A.2d 452 (citing State v. Towey, 244 N.J.Super. 582, 583 A.2d 352 (App.Div.), certif. denied, 122 N.J. 159, 584 A.2d 226 (1990)), an illegal sentence could be corrected by increasing it, even after served. Therefore, Eigenmann's right to protection against double jeopardy required him to be resentenced as a young adult offender because his original sentence as a young adult offender was a legal sentence, but that his twenty-eight month term of imprisonment was properly increased to five years because that was the minimum legal, applicable term of incarceration. State v. Eigenmann, supra, 280 N.J.Super. at 346-48, 655 A.2d 452. We stated, "[O]nce service of the sentence commenced, the lawful discretionary elements of the sentence-no matter how thoughtlessly or erroneously conceived-could not be made more burdensome." Id. at 348, 655 A.2d 452. Accordingly, we remanded the case to sentence Eigenmann as a young adult offender to concurrent indeterminate terms of five years each. Ibid.[5]
In State v. Tavares, 286 N.J.Super. 610, 612, 670 A.2d 61 (App.Div.), certif. denied, 144 N.J. 376, 676 A.2d 1091 (1996), Tavares pleaded guilty to two counts of second-degree sexual assault by virtue of sexual contact with children under thirteen years of age. His plea was entered October 28, 1991 in accordance with a plea bargain by which the prosecutor undertook to recommend that he receive two consecutive sentences, each for eight years with three years' parole ineligibility. He was found subject to confinement to the Adult Diagnostic Treatment Center at Avenel, N.J.S.A. 2C:47-3, and he was sentenced to two indeterminate terms of not more than eight years each at that institution. He appealed. In an order dated May 11, 1994, we held that the sentence to indeterminate terms at Avenel was not authorized by law. Id. at 613, 670 A.2d 61. We added:
Although we find that the imposition of consecutive terms to Avenel does not violate State v. Yarbough, [100 N.J. 627, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 *146 (1986),] we caution the judge to explore the consequences of imposing two Avenel terms for a fixed number of years, to determine whether the result is in keeping with the judge's sentencing goals.
[State v. Tavares, supra, 286 N.J.Super. at 613, 670 A.2d 61.]
Without notice or a hearing, the sentencing judge entered an amended judgment on June 13, 1994, sentencing Tavares to two concurrent eight-year terms at Avenel. On October 28, 1994, the State moved for reconsideration of the amended sentence, arguing that the sentence, although within statutory limits, was "illegal" and therefore subject to be increased, because it had been entered in chambers, without notice to the State. That motion was argued January 20, 1995. The sentencing judge declined to change the sentence and the State appealed. Id. at 615, 670 A.2d 61. Tavares had been serving his sentence since June 13, 1994, without a stay.
On appeal, we held that the sentencing procedure had been improper. Id. at 616, 670 A.2d 61. Because we had remanded for re-sentencing, and not to enter a specific sentence in accordance with our directions, the court should have conducted sentencing procedures anew, including a hearing on notice in open court. Ibid. For the purpose of our decision, we assumed that the improper sentencing procedure had made the sentence itself "illegal" so that the protection against double jeopardy did not preclude modifying the sentence to Tavares's disadvantage. Id. at 619, 670 A.2d 61. We concluded:
[E]ven assuming that the sentence is "illegal," the State had an obligation to raise the issue in a timely fashion. The State could not wait, as it did, for four months after learning of the irregularity while defendant was serving his sentence. While an "illegal" sentence is "correctable at any time," the State has an obligation to move quickly when asserting an "illegality" because the defendant has an expectation of finality of a sentence within the parameters of statutory limits (at least in the absence of some appeal or post-conviction proceeding pending on his or her application). Here the State waited over four months after learning of the remand sentence before taking any action to correct what it now contends to have been a fundamental injustice. But cf. R. 1:7-4; 2:4-1(a). Even though the State did not know about the defendant's resentencing when it occurred, it is uncontested that the prosecuting attorney learned of the new sentence in June 1994, shortly after it was imposed, but did not file a "motion for reconsideration" for more than four months thereafter. This was far too late.
[Ibid. (citations omitted).]
Significantly for the present case, we then continued as follows:
In concluding that the State's application was untimely, we emphasize the nature of the "illegality" asserted.... [T]he State does not contend that the sentence was unauthorized by the governing statute or even violated the negotiated plea agreement. Accordingly, we need not address what action a court can take on the prosecutor's application, or sua sponte, whenever it learns that the sentence does not conform with the minimum requirements of the governing statute.
[Id. at 619-20, 670 A.2d 61.]
Upon that basis, we dismissed the appeal. Id. at 620, 670 A.2d 61.
We conclude that the present case is governed by State v. Baker, 270 N.J.Super. 55, 636 A.2d 553, (App.Div.), aff'd o.b., 138 N.J. 89, 648 A.2d 1127 (1994), and State v. Eigenmann, supra, 280 N.J.Super. 331, 655 A.2d 452, and not by State v. Tavares, supra, 286 N.J.Super. 610, 670 A.2d 61. Horton's original sentence was illegal, not because of any procedural irregularity in the manner in which it was imposed, but because N.J.S.A. 2C:43-6.4(a) mandates sentencing someone convicted of endangering the welfare of a child by engaging *147 in sexual conduct which would impair or debauch the morals of the child to community supervision for life. We are of the view that under these circumstances, the lapse of time between defendant's original sentencing and the correction of that sentence does not entitle him to avoid the Legislature's sentencing mandate. We therefore hold that re-sentencing defendant to impose community supervision for life does not offend either the constitutional prohibitions against double jeopardy or any considerations of fundamental fairness generated by the lapse of time.
As an alternative to his contention that re-sentencing is barred, defendant argues that he should be permitted to withdraw his guilty plea because he "was not told by the Court, nor is it mentioned in his plea agreement, that he would be placed on parole for the rest of his life as a result of his guilty plea." The record shows that the court did tell defendant before accepting his plea that "you may, in fact, be subject to community supervision." But the record does not contain either an explanation that "community supervision" means parole for life or an indication that lifetime parole is mandatory. In fact, the court's colloquy with defendant implies that whether or not community supervision will be imposed depends upon a determination by the prosecutor, which could be contested at a hearing.
Defendant's counsel before our court also represented him in connection with his plea bargain and the entry of his guilty plea. Defense counsel represented to us that when the plea bargain was reached he did not know and therefore did not inform defendant that defendant would be subject to lifetime parole. The assistant prosecutor who argued for the State conceded that if defendant was not advised before pleading that he would be subject to lifetime parole, he would be entitled to withdraw his guilty plea.[6]See State v. Garcia, 320 N.J.Super. 332, 339, 727 A.2d 97 (App.Div. 1999) (attorney who failed to inform his alien client that guilty plea would subject him to incarceration for an indefinite period because Cuba would not accept return of deported nationals rendered ineffective assistance); cf. State v. Howard, 110 N.J. 113, 122, 539 A.2d 1203 (1988); State v. Kovack, 91 N.J. 476, 482-84, 453 A.2d 521 (1982); State v. Nichols, 71 N.J. 358, 361, 365 A.2d 467 (1976).
"To vacate the plea, defendant must show not only that he was misinformed of the terms of the agreement or that the sentence violated his reasonable expectations, but also that he is prejudiced by enforcement of the agreement." State v. Howard, supra, 110 N.J. at 123, 539 A.2d 1203. That means, the Supreme Court explained, "the plea will not be vacated if knowledge of the consequences would not have made any difference in the defendant's decision to plead." Ibid. Despite defendant's counsel's representation, the State may, of course, dispute defendant's contention that defendant was not advised of the consequences of his plea and may attempt to prove that he would have pleaded guilty even if he had been properly advised. An evidentiary hearing is therefore necessary. A determination whether or not the amended judgment of conviction should be vacated, or what other relief, if any, should be granted to defendant, must await the results of that hearing.
This matter is therefore remanded to the Law Division for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.
NOTES
[1] During argument of the motion and cross-motion which resulted in the order that is the subject of the present appeal, the assistant prosecutor stated that she did not have the sentencing transcript available because it had not been ordered. Both parties are apparently content to assume that the judgment of conviction is consistent with the transcript.
[2] a. Notwithstanding any provision of law to the contrary, a court imposing sentence on a person who has been convicted of aggravated sexual assault, sexual assault, aggravated criminal sexual contact, kidnapping pursuant to paragraph (2) of subsection c. of N.J.S. 2C:13-1, endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of the child pursuant to subsection a. of N.J.S. 2C:24-4, luring or an attempt to commit any such offense shall include, in addition to any sentence authorized by this Code, a special sentence of community supervision for life.

b. The special sentence of community supervision required by this section shall commence upon completion of the sentence imposed pursuant to other applicable provisions of the Code of Criminal Justice. Persons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation.
[3] No copies of the July 17, 1997 and October 30, 1997, letters are included in the appendices supplied to us. However, letters of those dates are referred to in the January 22, 1998, letter.
[4] Following the affirmance of our decision, Baker applied for a writ of habeas corpus from the Federal District Court and, upon denial of his application, appealed to the United States Court of Appeals for the Third Circuit. Baker v. Barbo, 177 F.3d 149 (3d Cir.), cert. denied, ___ U.S. ___, 120 S.Ct. 261, 145 L.Ed.2d 219 (1999). The Third Circuit affirmed. Ibid.
[5] For Federal cases holding that a defendant's having fully served an illegal sentence does not bar the Government's appeal and the imposition of a more onerous, legal sentence, see, e.g., United States v. McClain, 133 F.3d 1191 (9th Cir.), cert. denied, 524 U.S. 960, 118 S.Ct. 2386, 141 L.Ed.2d 752 (1998); United States v. Edmonson, 792 F.2d 1492 (9th Cir. 1986), cert. denied, 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987); Llerena v. United States, 508 F.2d 78 (5th Cir. 1975). See also Lee R. Russ, Annotation, Power of Court to Increase Severity of Unlawful Sentence-Modern Status, 28 A.L.R.4th 147 (1984).
[6] In response to our specific inquiry, the assistant prosecutor assured us that she was authorized to make that concession.