872 A.2d 1109 (2005)
377 N.J. Super. 365
STATE of New Jersey, Plaintiff-Appellant,
v.
John B. CHAMBERS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 5, 2005.
Decided May 13, 2005.
*1110 Michael M. Rubbinaccio, Morris County Prosecutor, attorney for appellant (Joseph Connor, Jr., Assistant Prosecutor, on the brief).
Greggory M. Marootian, Livingston, attorney for respondent.
Before Judges SKILLMAN, PARRILLO and GRALL.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the 2004 amendment to N.J.S.A. 39:4-50(a)(1) that reduced the period of license suspension for some first-time driving while under the influence of alcohol offenses from a minimum of six months to three months applies retroactively to a case where the defendant violated N.J.S.A. 39:4-50 and was convicted in municipal court before the amendment's effective date. We conclude that N.J.S.A. 1:1-15, which establishes a general prohibition against retroactive application of penal laws, precludes such retroactive application of the 2004 amendment to N.J.S.A. 39:4-50(a)(1).
On January 11, 2003, defendant was charged in the Riverdale Municipal Court with driving his car while under the influence of alcohol, in violation of N.J.S.A. 39:4-50.[1] After a trial on May 21, 2003, the municipal court found defendant guilty of the charge. On that same day, the court sentenced defendant to a six-month suspension of his driver's license, twelve hours at an Intoxicated Driver Resource Center, a $402 fine, a $200 DWI surcharge, a $75 Safe Neighborhood Fund assessment and a $50 VCCB assessment.
Defendant appealed his conviction to the Law Division. Based on a de novo review of the municipal court record, on March 19, 2004, the Law Division found defendant guilty of violating N.J.S.A. 39:4-50 and reimposed the same sentence imposed by the municipal court. The Law Division found defendant guilty based solely on a police officer's observations of defendant's operation of his car and performance of sobriety tests; the Law Division did not find defendant guilty of a per se violation of N.J.S.A. 39:4-50 based on the results of blood alcohol tests because the arresting officers failed to comply with the procedural requirements of N.J.S.A. 39:4-50.2(b),(c) and (d).[2]
*1111 After his conviction and sentencing, defendant moved to amend his sentence on the ground that the 2004 amendment to N.J.S.A. 39:4-50(a)(1), which reduced the period of license suspension for some first-time offenders from six to twelve months to three months, L. 2003, c. 314, § 2,[3] should be applied retroactively to his case. The court granted defendant's motion and entered an order on July 29, 2004, which reduced the period of his license suspension from 180 to 90 days.
The State appeals from the order reducing the length of defendant's license suspension. The State's primary argument is that N.J.S.A. 1:1-15 precludes the retroactive application of the 2004 amendment to N.J.S.A. 39:4-50(a)(1) to defendant's sentence. Defendant argues in his answering brief that the State is barred from appealing the July 29, 2004 order reducing his suspension to three months because he has already completed that suspension. We consider defendant's argument first.

I
Defendant initially raised the issue of the retroactive application of the 2004 amendment to N.J.S.A. 39:4-50(a)(1) to the period of his license suspension by a motion for amendment of sentence filed on March 29, 2004, ten days after sentencing. For reasons not disclosed by the record, the trial court did not decide the motion until July 21, 2004, by which time defendant's license already had been suspended for more than three months. As a result, defendant's driver's license was restored shortly after the Law Division decision on his motion. On August 20, 2004, the State appealed from the July 29, 2004 order memorializing the trial court's decision, which was within the forty-five-day period allowed by Rule 2:4-1 for an appeal from a final judgment or post-judgment order.
Defendant argues that because he had completed the three-month period of suspension provided by the July 29, 2004, order before the State appealed, it would violate his expectation of finality and principles of fundamental fairness to allow the State to seek reinstatement of the original six-month suspension.
It is firmly established that a court may correct an illegal sentence at any time. State v. Baker, 270 N.J.Super. 55, 74-76, 636 A.2d 553 (App.Div.), aff'd o.b., 138 N.J. 89, 648 A.2d 1127 (1994). "A corollary of this principle is that the State may appeal an illegal sentence without express authorization in the criminal code or rules of court." State v. Parolin, 339 N.J.Super. 10, 13-14, 770 A.2d 1204 (App.Div.2001), rev'd on other grounds, 171 N.J. 223, 793 A.2d 638 (2002); see State v. Sheppard, 125 N.J.Super. 332, 336-39, 310 A.2d 731 (App.Div.), certif. denied, 64 N.J. 318, 315 A.2d 407 (1973).
Although we have indicated that there may be some outer limit on the period within which even an illegal sentence may be challenged, see, e.g., State v. Tavares, 286 N.J.Super. 610, 619-20, 670 A.2d 61 (App.Div.), certif. denied, 144 N.J. 376, 676 A.2d 1091 (1996), the State's appeal in this case was clearly timely because it was filed within the usual forty-five-day period allowed by the court rules. The mere circumstance that defendant's license had already been suspended for the three-month *1112 period provided under the 2004 amendment to N.J.S.A. 39:4-50(a)(1) and defendant's license restored did not give defendant an expectation of finality that foreclosed the State from appealing. See State v. Ercolano, 335 N.J.Super. 236, 243, 762 A.2d 259 (App.Div.2000), certif. denied, 167 N.J. 635, 772 A.2d 937 (2001); State v. Horton, 331 N.J.Super. 92, 97-102, 751 A.2d 141 (App.Div.2000); State v. Eigenmann, 280 N.J.Super. 331, 336-37, 655 A.2d 452 (App.Div.1995); see also State v. Leslie, 269 N.J.Super. 78, 86, 634 A.2d 572 (App.Div.1993) ("[T]he State's authority to appeal the sentence had not expired even though defendant served the custodial portion of the probationary sentence. . . ."), certif. denied, 136 N.J. 29, 641 A.2d 1040 (1994). Indeed, defendant could not have had any expectation of a license suspension of less than six months until the court granted his motion for a reduction of sentence on July 21, 2004, and the State promptly filed a notice of appeal from the order memorializing that reduction. Therefore, the State's appeal is properly before us.

II
When defendant committed the offense of driving while under the influence of alcohol on January 11, 2003, as well as when he was convicted in municipal court on May 21, 2003, N.J.S.A. 39:4-50(a)(1) required the suspension of a first offender's motor vehicle license for a minimum of six months, regardless of whether the conviction was based on the results of blood alcohol tests or observations of the driver. However, before defendant's appeal was heard by the Law Division, the Legislature enacted amendments to N.J.S.A. 39:4-50 that included a reduction in the length of the mandated license suspension for some first offenders. The primary objective of those amendments was to reduce the blood alcohol level required for a finding of a violation of N.J.S.A. 39:4-50 based solely on blood alcohol tests from .10% to .08% in order to avoid a loss of federal highway funds. Assembly Law and Public Safety Committee, Statement to Assembly, No. 682 (Dec. 11, 2003); Press Release, Office of the Governor, Governor Signs Law Lowering DWI Blood Alcohol Content (Jan. 20, 2004).
The amendments also established different periods of license suspension, depending on whether an offender's blood alcohol concentration is equal to or above the prior standard of .10% or between .08% and.10%. The Legislature increased the minimum period of license suspension for first offenders with a blood alcohol level of .10% or more from six to seven months. L. 2003, c. 314, § 2. However, the Legislature established a new three-month period of license suspension for first offenders with a blood alcohol level between .08% and.10%. Ibid. The 2004 amendment provides that this three-month period of license suspension also applies to a first offense for "operat[ing] a motor vehicle while under the influence of intoxicating liquor," ibid., that is, to any conviction based on observations of the offender rather than a per se violation based on blood alcohol tests.[4]
Even though this amendment was enacted after defendant violated N.J.S.A. 39:4-50 and was convicted in municipal court, the Law Division concluded that the amendment should be applied retroactively to reduce the period of defendant's license suspension from six to three months. We hold that such retroactive application of *1113 the amendment to N.J.S.A. 39:4-50(a)(1) is inconsistent with the general prohibition against retroactive application of penal laws contained in N.J.S.A. 1:1-15.[5] Therefore, we reverse.
N.J.S.A. 1:1-15 provides in pertinent part:

No offense committed, and no liability, penalty or forfeiture, either civil or criminal, incurred, previous to the time of the repeal or alteration of any act or part of any act, by the enactment of the Revised Statutes or by any act heretofore or hereafter enacted, shall be discharged, released or affected by the repeal or alteration of the statute under which such offense, liability, penalty or forfeiture was incurred, unless it is expressly declared in the act by which such repeal or alteration is effectuated, that an offense, liability, penalty or forfeiture already committed or incurred shall be thereby discharged, released or affected [.]
[Emphasis added.]
Thus, N.J.S.A. 1:1-15 expressly prohibits the retroactive application of a statutory amendment reducing a criminal penalty unless the amendment contains a declaration that it shall apply retroactively.
Although some decisions by our courts have cited N.J.S.A. 1:1-15 in denying retroactive application of statutory amendments that repealed or reduced criminal penalties,[6]see, e.g., State v. Low, 18 N.J. 179, 187-88, 113 A.2d 169 (1955); State v. Fernandez, 209 N.J.Super. 37, 42-43, 506 A.2d 1245 (App.Div.1986); Savad v. Dep't of Corr., 178 N.J.Super. 386, 391-92, 429 A.2d 381 (App.Div.), certif. denied, 87 N.J. 389, 434 A.2d 1071 (1981), there is no decision in this State that has discussed the background of N.J.S.A. 1:1-15 or the precise circumstances that trigger its application. However, Congress and most state legislatures have enacted similar provisions, commonly referred to as "savings statutes," and there are decisions in the federal courts and other state courts that contain extensive discussion of the background and application of such statutes. See, e.g., Holiday v. United States, 683 A.2d 61, 65-74 (D.C.1996), cert. denied, 520 U.S. 1162, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997); State v. Ismaaeel, 840 A.2d 644, 647-56 (Del.Super.Ct.), aff'd o.b., 854 A.2d 1158 (Del.2004).
The intent of savings statutes, many of which were enacted in the nineteenth century, see Comment, Today's Law & Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U. Pa. L.Rev. 120, 127-30 (1972), was "to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of `all prosecutions which had not reached final disposition in the highest court authorized to review them.'" Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 660, 94 S.Ct. 2532, 2536, 41 L.Ed.2d 383, 390 (1974) (quoting Bradley v. United States, 410 U.S. 605, 607, 93 S.Ct. 1151, 1154, 35 L.Ed.2d 528, 532 (1973)). "Common-law abatements resulted not only from unequivocal statutory repeals, but also from repeals and re-enactments with different penalties, whether the re-enacted legislation increased or decreased the penalties." Ibid.
The interpretation of savings statutes, as applied to reductions in criminal penalties, has not been uniform. Some state courts have interpreted such statutes to *1114 apply only where a defendant has been sentenced before enactment of an amendment reducing a penalty. See, e.g., People v. Schultz, 435 Mich. 517, 460 N.W.2d 505, 509-12 (1990); Finley v. State, 847 S.W.2d 105, 106-07 (Mo.Ct.App.1992); People v. Oliver, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 134 N.E.2d 197, 200-04 (1956); State v. Tapp, 26 Utah 2d 392, 490 P.2d 334, 335-36 (1971). Courts have reached this result by focusing on the phrase "penalty incurred" in savings statutes containing language similar to N.J.S.A. 1:1-15. As explained in Tapp:
The only way [the saving statute] can apply to the ... appropriate sentence for the offense ... would be through its provision that "The repeal of a statute does not * * * affect * * * any penalty incurred. * * *" Inasmuch as no penalty is incurred until the defendant is convicted, judgment entered and sentence imposed, that statute does not affect the propriety of doing so in accordance with the law as it exists at that time.

... [Therefore,] [i]f the statute reducing the penalty has become effective before the sentence, as in this case, the defendant is entitled to the lesser penalty as provided by the law at the time of the judgment and sentence. [490 P.2d at 336.]
The federal courts as well as some state courts reject this view and construe savings statutes to prohibit retroactive application of a statute reducing a criminal penalty to any offense committed before the amendment's effective date. See, e.g., Ismaaeel, supra, 840 A.2d at 647-56; Holiday, supra, 683 A.2d at 72-80; State v. Kane, 101 Wash.App. 607, 5 P.3d 741, 742-47 (2000). Those courts reason that construing a savings statute to allow limited retroactive application of a statute reducing a criminal penalty to a defendant who has not yet been sentenced would encourage manipulation of sentencing dates and result in similarly situated defendants being treated unequally:
[A] legislature could ... rationally conclude that the best approach would be a purely prospective one, so that all defendants who committed crimes before the statute became effective would be treated equally. Otherwise, sentencings could get caught up in manipulations with unfair results overall. Some convicted felons, for example, might be able to arrange sentencing delays to take advantage of the new sentencing scheme, whereas others could not achieve the same result before less sympathetic judges.
[Holiday, supra, 683 A.2d at 78-79.]
We have no need to decide which line of cases to follow in interpreting N.J.S.A. 1:1-15 because both defendant's violation of N.J.S.A. 39:4-50 and his conviction and sentence in municipal court occurred before the effective date of the 2004 amendment. Consequently, even under the cases that construe savings statutes restrictively as applied to reductions in criminal penalties, we would conclude that defendant "incurred" the penalty of a six-month suspension of his motor vehicle license when the municipal court sentenced him on May 21, 2003. The judgment of conviction memorializing that sentence constituted a final judgment even though defendant had a right of appeal to the Law Division, see State v. L.R., 167 N.J.Super. 364, 367-68, 400 A.2d 877 (Law Div.1979), in which the standard of review is de novo based on the municipal court record, R. 3:23-8. Thus, even though the Law Division resentenced defendant after it also found him guilty of violating N.J.S.A. 39:4-50, defendant had incurred the penalty of a six-month suspension of his license in municipal court before that appeal was heard. Therefore, N.J.S.A. *1115 1:1-15 prohibits application of the 2004 amendment to N.J.S.A. 39:4-50(a)(1) to defendant's sentence.
Moreover, even under decisions that apply amendments to criminal statutes considered to be ameliorative retroactively, see, e.g., Bey, supra, 112 N.J. at 102-04, 548 A.2d 846, we perceive no basis for concluding that the 2004 amendment to N.J.S.A. 39:4-50(a)(1) was ameliorative or for inferring a legislative intent to apply the amendment retroactively. The only statutory amendments reducing criminal penalties that are considered ameliorative are ones "aimed at mitigating a legislatively perceived undue severity in the existing criminal law." Kendall v. Snedeker, 219 N.J.Super. 283, 287 n. 1, 530 A.2d 334 (App.Div.1987). As previously noted, the essential purpose of the 2004 amendments to N.J.S.A. 39:4-50 was not to reduce the penalties for driving while under the influence but rather to prevent the loss of federal highway funds by expanding this offense to include drivers with a blood alcohol concentration between .08% and.10%. At the same time, the Legislature increased the minimum period of license suspension of a person who drives with a blood alcohol concentration of .10% or higher from six to seven months, L. 2003, c. 314, § 2, and also strengthened the mandatory prison term for third or subsequent convictions under N.J.S.A. 39:4-50, L. 2003, c. 315, § 2. Thus, the overall thrust of the 2004 amendments was to expand the application of N.J.S.A. 39:4-50 and increase the penalties for violators.
Although the Legislature extended the offense of driving while under the influence to include drivers with a blood alcohol concentration of between .08% and .10%, it evidently concluded that driving with a blood level within that range reflects a lesser degree of culpability than driving with a blood level of .10% or more. Consequently, it provided a shorter three-month period of license suspension for such violations.
There is no legislative history illuminating the Legislature's intent in making this shorter period of license suspension also applicable to first violations of N.J.S.A. 39:4-50(a) that are based on observations of the violator rather than blood alcohol tests. However, the State's brief postulates the following rationale for applying the shorter period of suspension to such violators:
The Legislature could have provided a six-month suspension for all first offenders....
However, the Legislature made the policy choice to treat those with a blood-alcohol level of 0.08% or more but less than 0.10% more leniently than those with a blood-alcohol level of 0.10% or more. It did so by providing a three-month suspension for those who drive with a blood-alcohol level of 0.08% or more but less than 0.10%.
Once the Legislature made that policy choice, a problem arose. An unwanted element of arbitrariness would have crept into drunken-driving sentencing unless the Legislature included under-the-influence drivers in the class of motorists who face only a three-month suspension for a first offense.
The problem is illustrated by the hypothetical case of a motorist who drives with a blood-alcohol level of 0.08% or 0.09% and who is also under the influence. The trial court could convict that motorist based on his/her blood-alcohol level and on an under-the-influence theory.
If the trial judge chose to sentence on an under-the-influence theory, the defendant would lose his/her license for six months. If, however, the trial judge chose to sentence based on blood-alcohol level, the defendant would lose his/her *1116 license for only three months. Since no principle of law requires a trial court to sentence on the more onerous (or less onerous) theory of liability, this would have added a certain arbitrariness to sentencing.
By including under-the-influence drivers with those who drive with blood-alcohol levels of 0.08% or more but less than 0.10%, the Legislature eliminated this potential arbitrariness.
Under this view of the legislative intent in applying the new three-month period of license suspension to persons found guilty of violating N.J.S.A. 39:4-50(a)(1) based solely on observations, there is no reason to apply this provision retroactively because the new offense of driving a motor vehicle with a blood alcohol concentration between .08% and .10% did not exist until the effective date of the 2004 amendment to N.J.S.A. 39:4-50(a)(1).
We also note that the most common circumstance in which a violation of N.J.S.A. 39:4-50 is based on a police officer's observations rather than blood alcohol tests is where the offender refuses to consent to a blood alcohol test, in violation of N.J.S.A. 39:4-50.2, which formerly subjected the offender to a separate six-month, recently increased to a minimum seven-month,[7] license suspension, N.J.S.A. 39:4-50.4a. The Legislature may have contemplated that in sentencing first offenders under the 2004 amendment to N.J.S.A. 39:4-50(a)(1), the courts would make the period of license suspension for refusing to consent to a breathalyzer test consecutive to the sentence for driving while under the influence based on a police officer's observations, for an aggregate suspension of nine months, which would be greater than the new minimum seven-month suspension for a first violation of N.J.S.A. 39:4-50(a) based on a blood alcohol reading of .10% or higher.
For these reasons, even if N.J.S.A. 1:1-15 were not controlling, there would be no basis for concluding that the 2004 amendments to N.J.S.A. 39:4-50(a) were "aimed at mitigating a legislatively perceived undue severity in the existing ... law" relating to driving while under the influence, Kendall, supra, 219 N.J.Super. at 287, 530 A.2d 334, and therefore should be applied retroactively.
Accordingly, we reverse the July 29, 2004 order of the Law Division reducing the period of defendant's motor vehicle license suspension from six to three months and remand for reinstatement of the original period of suspension.
NOTES
[1] Defendant also was charged with careless driving, possession of marijuana and possession of drug paraphernalia. Those charges are not implicated in this appeal.
[2] Two breathalyzer tests produced readings of.15% and .16% blood alcohol concentration.
[3] L. 2003, c. 315, § 2, which was passed and became effective on the same day as L. 2003, c. 314, § 2, altered the penalty for a third or subsequent violation of the statute but inadvertently failed to incorporate or reference the amendments to N.J.S.A. 39:4-50 contained in L. 2003, c. 314, § 2. The Legislative Counsel, with the concurrence of the Attorney General, corrected this error pursuant to N.J.S.A. 1:3-1. As a result, L. 2003, c. 315, § 2, as corrected, also reflects the statutory amendments made by L. 2003, c. 314, § 2.
[4] In State v. Kashi, 180 N.J. 45, 48, 848 A.2d 744 (2004), which involved the pre-2004 version of N.J.S.A. 39:4-50(a), the Court stated that "N.J.S.A. 39:4-50(a) creates one offense that may be proved by alternative evidential methods." This view of N.J.S.A. 39:4-50(a) may need to be reconsidered in light of the 2004 amendments.
[5] We note that the State failed to cite N.J.S.A. 1:1-15 in its trial court brief.
[6] There also are cases that have decided issues relating to the retroactive application of statutory amendments reducing criminal penalties without citing N.J.S.A. 1:1-15. See, e.g., Parolin, supra, 171 N.J. at 232-33, 793 A.2d 638; State v. Bey, 112 N.J. 45, 98-104, 548 A.2d 846 (1988).
[7] Shortly after enactment of the 2004 amendments to N.J.S.A. 39:4-50, the Legislature amended N.J.S.A. 39:4-50.4a to increase the period of license suspension for refusing to submit to a breathalyzer test from six months to a range of seven months to a year. L. 2004, c. 8, § 1.