NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0352-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ANTHONY SCUDIERI,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 1, 2021**
>
> **APPELLATE DIVISION**

Submitted September 20, 2021 – Decided November 1, 2021

Before Judges Sabatino, Mayer and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 20-004.

Leckerman Law, LLC, attorneys for appellant; (Kevin M. Leckerman, of counsel and on the brief).

Lori Linskey, Acting Monmouth County Prosecutor, attorney for respondent; (Melinda A. Harrigan, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

NATALI, J.A.D.

On August 30, 2019, the Sea Girt police arrested defendant for multiple motor vehicle violations, including driving while intoxicated (DWI), N.J.S.A. 39:4-50, and refusal to submit to testing, N.J.S.A. 39:4-50.4a. He pled guilty to the refusal violation and the State agreed to dismiss the remaining charges.

In its January 22, 2020 sentence, the municipal court suspended defendant's driving privileges for seven months, consistent with mandatory penalties associated with the refusal statute in effect at the time of his arrest. The court also required him to pay all applicable fines and penalties, complete twelve hours of rehabilitation at the Intoxicated Driver Resource Center, and install an ignition interlock device for six months after restoration of his driving privileges. After a trial de novo, Judge Marc C. LeMieux entered an August 25, 2020 order accompanied by a written opinion, affirming defendant's conviction and sentence, and staying the court's decision pending appeal.

Before us, defendant challenges solely his sentence, contending, as he did in the municipal court and Law Division, that those courts committed error when they failed to apply the refusal statute in effect at the time of his sentence. That statute required only suspension of his driving privileges until installation of an ignition interlock device, rather than the more punitive penalty of an automatic seven-month suspension of his driving privileges required under the previous statute.

To provide context for our opinion, we begin with a brief discussion of relevant provisions of the prior and current refusal statutes. On August 23, 2019, Governor Philip Murphy signed a bill that, in part, amended the penalties associated with a refusal conviction. The legislation expressly provided that the "act shall take effect on the first day of the fourth month after enactment and shall apply to any offense occurring on or after that date." L. 2019, c. 248, § 7. Consequently, the amendment became effective on December 1, 2019, and applied only to offenses committed on that date or subsequent, and not before.

Before December 1, 2019, a defendant convicted of a first offense for refusing to submit to testing forfeited his license for seven months, in addition to other statutory penalties. See L. 2009, c. 201, § 5 ("[T]he municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of [N.J.S.A.] 39:4-50, shall refuse to submit to a test . . . when requested to do so, for not less than seven months or more than one year."). In passing the amended statute, however, the Legislature determined that the installation of ignition interlock devices was a more effective way to prevent drunk driving than license suspension. The amended statute therefore struck the seven-month license suspension provision and required instead all defendants convicted of refusal to install an ignition interlock device. L. 2019, c. 248, § 3 (effective December 1, 2019) (The offender forfeits "the right to operate a motor

vehicle over the highways of this State until the person installs an ignition interlock device in one motor vehicle the person owns, leases, or principally operates, whichever the person most often operates.").

In his written opinion, Judge LeMieux rejected defendant's argument that the amended refusal statute should apply retroactively and determined that the Legislature's pronouncement that the amended law applied only to offenses that occur on or after December 1, 2019 expressed its clear intent that the legislation was to apply prospectively. As defendant committed his offense on August 30, 2019, the judge concluded the amended law simply did not apply when defendant was sentenced.

Judge LeMieux explained the new amendment was "not aimed at mitigating a severe penalty," but rather effectuated the legislative finding that ignition devices more effectively deterred drunk driving. He also concluded defendant could not have reasonably expected the legislative amendment to apply to his offense.

The judge observed that sentencing defendant under the prior refusal statute appeared to be "inconsistent" with our decisions in State in Interest of J.F., 446 N.J. Super. 39 (App. Div. 2016), and State in Interest of C.F., 444 N.J. Super. 179 (App. Div. 2016), interpreting the savings clause, N.J.S.A. 1:1-15. Judge LeMieux nevertheless applied the prior refusal statute because "the

Legislature's intent [was] clear on its face."  Finally, the judge rejected defendant's reliance on State v. Smith, 58 N.J. 202 (1971), concluding "it would not be unjust to sentence [defendant] pursuant to the laws that were in place at the time that he committed this offense."

Before us, defendant raises the following two points for our consideration:

> I. THE AMENDED REFUSAL AND DWI LAWS FUNCTION AS BOTH CURATIVE AND AMELIORATIVE LEGISLATION AND THEREFORE MUST BE GIVEN PIPELINE RETROACTIVITY TO THIS MATTER BECAUSE THE CONVICTION AND SENTENCING OCCURRED AFTER THE EFFECTIVE DATE OF THE LAWS.
>
> II. THE NEW REFUSAL LAW SHOULD APPLY IN THIS MATTER TO PREVENT AN UNJUST RESULT.

We reject both arguments and affirm.  When it amended N.J.S.A. 39:4-50.4a, the Legislature clearly stated that the new legislation would become effective over four months after it was signed into law and apply only to the class of defendants who committed offenses on or after December 1, 2019.  That decision by the Legislature represented its unequivocal intent to apply the new statute prospectively, and therefore the common law exceptions to the presumption of prospective application do not apply.  Further, because the Legislature amended the refusal statute to effectuate its determination that interlock devices served as a greater deterrent to drunk driving than a period of

license forfeiture, any ameliorative or curative nature of the statute does not warrant retroactive effect.

## I.

Whether Judge LeMieux correctly concluded that the amended refusal statute was not entitled to retroactive effect "is a purely legal question of statutory interpretation" based on legislative intent. As such, we apply a de novo standard of review. Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002).

We are convinced that the application of well-settled principles of statutory construction correctly resolve the issue before us. In that regard, we begin with the oft-cited proposition that "courts favor prospective application of statutes." Twiss v. State, Dep't of Treasury, Off. of Fin. Mgmt., 124 N.J. 461, 466–67 (1991) (citing Gibbons v. Gibbons, 86 N.J. 515, 521 (1981)). This is so, in part, because "'retroactive application of new laws involves a high risk of being unfair'" and may implicate due process rights. State v. J.V., 242 N.J. 432, 443 (2020) (quoting Gibbons, 86 N.J. at 522); Twiss, 124 N.J. at 466–67.

The presumption of prospectivity is but a rule of statutory interpretation, requiring "a search for legislative intent," as well as a reading of the language for its "ordinary or plain meaning." Twiss, 124 N.J. at 467, 471; Rothman v. Rothman, 65 N.J. 219, 224 (1974). That presumption can be overcome by

indication of contrary legislative intent, either expressed in the language of the statute itself, or implied in its purpose. State v. Bey, 112 N.J. 45, 103 (1988).

We first review the statute's plain language, which is the "best indicator" of legislative intent. State v. Rodriguez, 238 N.J. 105, 113 (2019). Statutory language "must be construed 'in context with related provisions so as to give sense to the legislation as a whole.'" Ibid. (quoting Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018)). "Unless it is 'inconsistent with the manifest intent of the legislature,' or 'another or different meaning is expressly indicated,' we ascribe to the Legislature's words and phrases 'their generally accepted meaning, according to the approved usage of the language.'" Finkelman v. Nat'l Football League, 236 N.J. 280, 289 (2019) (quoting N.J.S.A. 1:1–1).

Thus, if the language of the statute clearly reflects the Legislature's intent, then the court applies the law as written, affording the terms their plain meaning. J.V., 242 N.J. at 442. If the language is ambiguous, "we may resort to 'extrinsic interpretative aids, including legislative history,' to determine the statute's meaning." Ibid. (quoting State v. S.B., 230 N.J. 62, 68 (2017)).

When appropriate, and to avoid an unfair and "mechanistic" approach to a retroactivity analysis, see Gibbons, 86 N.J. at 522, we consider two questions to assist "in the determination whether a court should apply a statute retroactively." Twiss, 124 N.J. at 467. The first question asks "whether the

Legislature intended to give the statute retroactive application." Twiss, 124 N.J. at 467. "If so, the second question is whether retroactive application is an unconstitutional interference with 'vested rights' or will result in a 'manifest injustice.'" Ibid. (internal citations omitted). "Both questions must be satisfied for a statute to be applied retroactively." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 387 (2016).

When evaluating the first question, our Supreme Court has identified three circumstances under which retroactive application is appropriate. Gibbons, 86 N.J. at 522–23 (1981); James v. New Jersey Manufacturers Ins. Co., 216 N.J. 552, 563 (2014). Retroactive effect is justified: "(1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant." James, 216 N.J. at 563 (citing Gibbons, 86 N.J. at 522–23).

Under the first prong of the test, we evaluate whether the Legislature provided for retroactivity expressly, either in the language of the statute itself or its legislative history, or implicitly, by requiring retroactive effect to "make the statute workable or to give it the most sensible interpretation." Gibbons, 86 N.J. at 522.

Second, retroactive application is warranted if "the statute is ameliorative or curative." Gibbons, 86 N.J. at 523. The term ameliorative refers only to criminal laws that affect a "reduction in a criminal penalty." Kendall v. Snedeker, 219 N.J. Super. 283, 286 (App. Div. 1987). Not "[e]very statutory amendment which ameliorates or mitigates a penalty for a crime is . . . automatically subject to a presumption of retroactivity. The ameliorative amendment must be aimed at mitigating a legislatively perceived undue severity in the existing criminal law." Kendall, 219 N.J. Super. at 286 n.1. Ameliorative amendments that effect a mitigation in penalties "'represent[] a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.'" Id. at 286 (quoting People v. Oliver, 1 N.Y.2d 152 (Ct. App. 1956)). For this reason, "'the lesser penalty may be meted out in all cases decided after the effective date of the enactment, even though the underlying act may have been committed before that date.'" Ibid.

A curative law is one which "amends a previous law which is unclear, or which does not effectuate the actual intent of the Legislature in adopting the original act." Schiavo v. John F. Kennedy Hosp., 258 N.J. Super. 380, 386 (App. Div. 1992). The purpose of a curative amendment is merely to "remedy a perceived imperfection in or misapplication of a statute." Ibid. The amendment explains or clarifies existing law and brings it into "harmony with what the

Legislature originally intended." Ibid. An amendment to a statute will "not [be] considered 'curative' merely because the Legislature has altered a statute so that it better serves public policy objectives." Ardan v. Bd. of Rev., 231 N.J. 589, 612 (2018).

Third, we have applied a statute retroactively when "the parties' expectations warrant retroactive application." J.V., 242 N.J. at 444. When conducting our analysis under this prong, we "look at the controlling law at the relevant time and consider the parties' reasonable expectations as to the law." Johnson, 226 N.J. at 389.

In addition, the savings clause codifies the "general prohibition against retroactive application of penal laws."[1] In State v. Chambers, we explained

---

[1] The savings clause provides, in relevant part:

> No offense committed, and no liability, penalty or forfeiture, either civil or criminal, incurred, previous to the time of the repeal or alteration of any act or part of any act, by the enactment of the Revised Statutes or by any act heretofore or hereafter enacted, shall be discharged, released or affected by the repeal or
>
> alteration of the statute under which such offense, liability, penalty or forfeiture was incurred, unless it is expressly declared in the act by which such repeal or alteration is effectuated, that an offense, liability, penalty or forfeiture already committed or incurred shall be thereby discharged, released or affected . . . .
>
> [N.J.S.A. 1:1-15 (emphasis added)].

"[t]he intent of savings statutes . . . was to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of all prosecutions which had not reached final disposition in the highest court authorized to review them." 377 N.J. Super. 365, 372–73 (App. Div. 2005). Thus, the savings clause ensures that legislative revision to the criminal code does not end prosecution for conduct which occurred prior to the change. C.F., 444 N.J. Super at 189–190.

In C.F., the court found the new sentencing law at issue there could not "be said to have been applied retroactively . . . because the new law, N.J.S.A. 2A:4A–44, was enacted before C.F. incurred a penalty [and] the savings statute simply has no impact on the application of those new laws to him." C.F., 444 N.J. Super. at 190. The court therefore emphasized that application of the new law to the defendant was prospective, not retroactive. Ibid.

In evaluating whether retroactive application is proper, the savings clause requires a temporal inquiry to determine whether an offense has been "committed" or penalty "incurred" prior to the change in the law. C.F., 444 N.J. Super. at 188; State in Int. of J.F., 446 N.J. Super. 39, 57–58 (App. Div. 2016). Ordinarily, where a penalty is incurred after an amended statute is passed, the savings clause permits application of the new law to a defendant. State v. Parks, 192 N.J. 483, 488 (2007). The clause "expressly prohibits" retroactive

application of statutory enactments, however, unless the statute contains a legislative declaration to the contrary. Chambers, 377 N.J. Super. at 372.

Applying these principles, we agree with Judge LeMieux and conclude the plain language of the amended refusal statute expressed the Legislature's intention to apply the new legislation prospectively. It manifested this intent in two ways. First, it unequivocally provided that the statute was to become effective four months after its enactment. Second, it clearly stated the amendment only applied to those offenses occurring on or after December 1, 2019. Our conclusion on this point finds support in two recent decisions of the Supreme Court.

In Pisack v. B&C Towing, Inc, a group of plaintiffs argued that towing fees charged to them between 2012 and 2015 violated the Predatory Towing Prevention Act (Towing Act), N.J.S.A. 56:13-7 to -23, because the fees had not been established by the Director of Consumer Affairs and were authorized only via municipal ordinance. 240 N.J. 360, 369 (2020). Defendants argued that a 2018 amendment to the Towing Act authorizing fees established by municipal ordinance should be applied retroactively because the amendment was curative in nature. Id. at 370.

The Legislature had not specified whether the 2018 amendment should be afforded retroactive application but had provided that the amendment would

"take effect immediately." Ibid. (quoting L. 2018, c. 165). The Court found that the statute's immediate effective date "bespeak[s] an intent contrary to, and not supportive of, retroactive application" and held that the new law was not entitled to retroactive application. Id. at 370 (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 48 (2008)); see also State v. Parolin, 171 N.J. 223, 233 (2002) (affording prospective application only to an amendment to the No Early Release Act, which took effect immediately).

More recently, in State v. J.V., 242 N.J. at 435, the Supreme Court analyzed retroactive application of an amended juvenile waiver statute. In that case, after pleading guilty to attempted murder and armed robbery, a juvenile defendant was transferred to adult criminal court under the then-existing waiver statute, N.J.S.A. 2A:4A-26(a) (repealed and replaced by N.J.S.A. 2A:4A-26.1 (eff. March 1, 2016)). J.V., 242 N.J. at 437. Two months after J.V. pled guilty, the Legislature amended the waiver statute, N.J.S.A. 2A:4A-26.1. The new law added several factors for prosecutors to consider in requesting waiver and explicitly declared a future effective date "on the first day of the seventh month following enactment," which was after J.V. was sentenced. J.V., 242 N.J. at 438; L. 2015, c. 89, § 7. J.V. appealed, claiming he was entitled to a new hearing under the revised statute because it was ameliorative, and thus should be applied to his case retroactively. J.V., 242 N.J. at 439.

The Supreme Court held that the statute's effective date seven months into the future provided "clear evidence" that the new law had prospective effect and the explicit effective date was "'akin to a legislative flare, signaling to the judiciary that prospective application is intended.'" J.V., 242 N.J. at 438 (quoting Olkusz v. Brown, 401 N.J. Super. 496, 502 (App. Div. 2008)). Had the Legislature intended an earlier effective date, "'that intention could have been made plain in the very section directing when the law would become effective.'" Id. at 445 (quoting James, 216 N.J. at 568).

The J.V. court also concluded that a statute's express grant of prospectivity renders unnecessary an analysis of the exceptions addressed in Gibbons and James. J.V., 242 N.J. at 445. Indeed, the court explained that because the Legislature clearly conveyed its intention for prospective application of the amended statute, the ameliorative exception did not apply. Id. at 438. Thus, the Court concluded its analysis and held that a defendant "who was waived to adult court, pled guilty, and was sentenced long before [the amended waiver statute] became effective" could not retroactively claim the benefit of the new law. Id. at 448.

Here, by providing an effective date in the future, the Legislature intended L. 2019, c. 248 to apply prospectively, similar to the statute at issue in J.V. We also observe that the four-month gap between the law's passing and the effective

date was hardly an arbitrary or random decision. Rather, the law granted the New Jersey Motor Vehicle Commission time to "take any anticipatory administrative action in advance of that date as shall be necessary to implement the provisions of this act." L. 2019, c. 248, § 7.

We therefore need not consider whether any of the exceptions addressed in Gibbons and James, such as whether the amended refusal statute is ameliorative or curative, apply. J.V., 242 N.J. at 442–44 ("[W]e look to [the] exceptions only in instances 'where there is no clear expression of intent by the legislature that the statute is to be prospectively applied only.'" (quoting Gibbons, 86 N.J. at 522–23)); State v. Ghandi, 201 N.J. 161, 177 (2010) (When the plain language of the statute is clear and unambiguous, then "'our interpretive process is over'" without resort to outside resources.) (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189 (2007)); Nobrega v. Edison Glen Assocs., 167 N.J. 520, 536 (2001) ("'If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent.'") (quoting State v. Butler, 89 N.J. 220, 226 (1982)).

For similar reasons, we need not engage in the savings clause analysis conducted by the C.F. and J.F. courts as to when defendant incurred a penalty because the Legislature has clearly signaled that the amended statute applies

prospectively. C.F., 444 N.J. Super. at 188 ("[T]he savings statute was designed to prevent a new law—absent an express declaration when the new law is enacted—from 'discharg[ing], releas[ing] or affect[ing]' the application of an existing law . . . . ") (citing N.J.S.A. 1:1–15); J.F., 446 N.J. Super. at 57.

We reach this conclusion acknowledging that the defendant in C.F. was sentenced after the enactment of a new penal statute with an effective date six weeks in the future. L. 1982, c. 77, § 34. As noted, however, the refusal statute here, unlike in C.F., not only has a prospective effective date, but expressly limits application of the new penalty only to offenses occurring on or after a specified date.

We also note the potential consequences that could stem from application of the new sentencing laws to defendants, like defendant here, who committed offenses prior to the new law's enactment, but who are sentenced afterward. As we observed in Chambers, 377 N.J. Super. at 374, such an interpretation could "encourage manipulation of sentencing dates and result in similarly situated defendants being treated unequally," possibly allowing some defendants to "'arrange sentencing delays to take advantage of the new sentencing scheme, whereas others could not achieve the same result before less sympathetic judges.'" Ibid. (quoting Holiday v. United States, 683 A.2d 61, 78–79 (D.C. 1996)).

In any event, we are satisfied that were we to consider the common law exceptions to prospective application, as defendant argues in point one, retroactive application is not warranted because the amended refusal statute is neither curative nor ameliorative. As noted, the Legislature revised N.J.S.A. 39:4-50.4a because it concluded that interlock devices "are more effective in deterring drunk driving than license suspension" and "protect the public safety." L. 2019, c. 248, § 1. There is no indication in the text of the revised statute, or any of its legislative history, that the amendment was meant to clarify the existing refusal law or "remedy a perceived imperfection." Pisack, 240 N.J. at 371. The 2019 amendment is therefore not curative.

Nor does the amendment's ameliorative nature warrant retroactive application. While the new law significantly expands the use of ignition interlock devices to a broader class of offenders, and is accompanied by a lessening of the period of license forfeiture, the amendment was not aimed toward mitigating "a legislatively perceived undue severity in the existing criminal law," but was instead enacted to "constitute a low-cost solution to a dangerous and often fatal activity that imposes large social and economic costs on society." Kendall, 219 N.J. Super. at 286 n.1; L. 2019, c. 248, § 1.

Nor could defendant have expected the new ignition interlock penalty to apply to him when he committed the offense only one week after the Governor

signed the amended legislation into law on August 23, 2019.  The bill included the plain statement that the law would take effect four months later, in December 2019.  L. 2019, c. 248, § 7.  Thus, the expectations of the parties do not warrant retroactive application of the new refusal statute.

Because we find the first part of the Twiss test has not been met, we need not address the second question whether retroactive application unconstitutionally interferes with a vested right or will result in a manifest injustice.  For completeness, however, we note that defendant did not have a vested right to a particular remedy.  Nor, for the reasons expressed, do we find it manifestly unjust to apply the law in effect at the time of defendant's offense.

## II.

Defendant contends a contrary result is warranted because the term "offense" under the amended legislation is ambiguous, as he was convicted of committing a motor vehicle violation, not a criminal offense.  Because the term is undefined in the statute, he argues "offense" should be interpreted as the date of his conviction, not the date on which the motor vehicle violation occurred.  As noted, we disagree that the amended refusal statute is in any way ambiguous, or the legislative intent unclear.

Defendant first differentiates between the terms "offense" and "violation."  He relies on a past edition of Black's Law Dictionary that defines offense as a

"felony or misdemeanor; a breach of the criminal laws," and violation as "the act of breaking, infringing, or transgressing the law." Black's Law Dictionary 1081, 1570 (6th ed. 1994). In turn, he argues that the refusal statute addresses motor vehicle violations that are not criminal offenses. In support of this proposition, defendant cites State v. Denelsbeck, a Supreme Court case which resolved the issue of whether the defendant's "DWI offense was 'serious' or 'petty' for purposes of the Sixth Amendment." 225 N.J. 103, 107 (2016).

In answering the question before it, the Denelsbeck court focused on the potential term of incarceration, but also noted that "'New Jersey has never recognized a right to trial by jury for the motor-vehicle offense of DWI' and DWI is 'not a crime under New Jersey law.'" Id. at 119 (quoting State v. Hamm, 121 N.J. 109, 112 (1990)). The court found that defendant's third conviction for DWI did not constitute a serious offense requiring a jury trial, even after the Legislature had increased the severity of penalties for third or subsequent DWI offenses. Id. at 106. "[E]ven when the ignition interlock device is installed," the Court held that the increased "penal consequences of the offense do not tip the balance to classify it as 'serious.'" Id. at 123, 126.

Defendant's reliance on Denelsbeck is clearly misplaced. The effective date in the amended refusal statute does not turn on the seriousness of the motor vehicle violation. Further, the Denelsbeck court uses the term "offense"

interchangeably throughout its opinion to refer to previous convictions as well to motor vehicle violations. Compare Denelsbeck, 225 N.J. at 111–13 (discussing the right to jury trial for serious or petty offenses and referring to the right to trial by jury for the "motor-vehicle offense of DWI") with Denelsbeck, 225 N.J. at 116 ("The statutory scheme provides a tiered penalty structure for first, second, and 'third or subsequent' DWI offenses, with increasing penalties for each additional offense.") (quoting N.J.S.A. 39:4–50(a)).

Although neither the prior nor current refusal statutes defined the term "offense," courts construe "[t]echnical words and phrases, and words and phrases having a special or accepted meaning in the law . . . in accordance with such technical or special and accepted meaning." N.J.S.A. 1:1-1. The term "offense" is defined in the dictionary as "[a] violation of the law; a crime, often a minor one." Black's Law Dictionary 1300 (11th ed. 2019). Under this definition, offense is regularly used in the criminal context but applies to any "violation of the law," such as motor vehicle violations. A plain reading of the 2019 legislation, leads to only one reasonable interpretation—that defendant committed an "offense" on August 30, 2019 when he violated the law by refusing to submit to testing, and was therefore subject to the refusal statute's sentencing requirements.

We also find unpersuasive defendant's reliance on State v. Petrello, 251 N.J. Super. 476 (App. Div. 1991), State v. Burroughs, 349 N.J. Super. 225 (App. Div. 2002), State v. Ciancaglini, 204 N.J. 597 (2011), and State v. Revie, 220 N.J. 126 (2014). Those cases involved DWI "step-down" provisions, where courts equated the term offense with the date of the attendant conviction. Specifically, the "step-down" provision under the DWI statute allows a "second conviction" to be treated as a "first offense" for purposes of sentencing if the first offense occurred more than ten years earlier. N.J.S.A. 39:4-50(a)(3).

In Petrello, we held that the enhanced penalty for a subsequent DWI conviction was properly imposed even where the second violation occurred prior to sentencing for the defendant's first conviction, and despite the defendant not having been previously advised orally or in writing of the enhanced penalties. 251 N.J. Super. at 479. In Burroughs, we considered the timing of the defendant's DWI convictions across a span of twelve years. Burroughs, 349 N.J. Super. at 225. After defendant benefitted from a step-down for his second conviction, which occurred more than ten years after the first, he was convicted again two years later. Id. at 226. On appeal, the defendant argued that he should be sentenced as a second offender, rather than third, because his first offense had essentially been erased for sentencing purposes. Ibid. We disagreed, concluding that the leniency provided by the step-down provision was a one-

A-0352-20

time reward for good conduct and the defendant was "entitled to no further consideration." Id. at 227.

Similarly, the defendant in Revie faced sentencing for a fourth DWI "offense." 220 N.J. at 128. Following his third conviction, the court granted post-conviction relief with respect to the defendant's second DWI conviction, which resulted from an uncounseled guilty plea. Id. at 129. The Revie Court held the "uncounseled guilty plea . . . may not be used for the purpose of enhancing defendant's term of incarceration when he is sentenced in the present case" but found the uncounseled "DWI conviction constitutes a prior conviction for purposes of determining the administrative penalties as prescribed by N.J.S.A. 39:4-50(a)." Id. at 139–40. Lastly, in Ciancaglini, 204 N.J. at 599–601, the Supreme Court held a defendant's prior refusal "offense" could not enhance a subsequent DWI sentence. The Court explained the DWI and refusal statutes had discrete, albeit related, purposes and elements. Id. at 606–08.

In all of these cases, the Legislature's clear intent behind the step-down provision of N.J.S.A. 39:4-50(a) would be severely weakened by interpreting "offense" to apply at the time of violation rather than conviction. Further, it is clear from the language of N.J.S.A. 39:4-50(a) that the Legislature used the terms offense and conviction interchangeably. The step-down provision is only relevant once there has been a previous conviction; a violation without

conviction will not trigger the step-down provision, making the operative date the date of conviction in these situations. Unlike the Legislature's use of the term offense in N.J.S.A. 39:4-50(a), the 2019 amendment to the refusal statute, N.J.S.A. 39:4-50.4a, does not equivalate offense to the time of conviction.

### III.

Finally, defendant, relying on State v. Smith, 58 N.J. at 216, contends that Judge LeMieux committed error when he failed to apply the "lesser penalties of an amended statute" to avoid an "unjust result." Again, we disagree.

In Smith, 58 N.J. at 205, the trial court convicted defendant of unlawful use of marijuana and suspended her driving privileges as mandated by the statute then in effect. The court stayed the suspension, and during the pendency of the appellate proceedings, the Legislature enacted a new statute that gave sentencing courts discretion when determining whether to suspend a defendant's driving privileges. The defendant appealed the part of the judgment suspending her driver's license, and the suspension was stayed pending appellate review. Smith, 58 N.J. at 205. Prior to arguments before us, the Supreme Court granted certification on its own motion. Ibid.

The Supreme Court rejected the defendant's constitutional challenges and affirmed her conviction but remanded the matter for the sentencing court to reconsider her license suspension. Smith, 58 N.J. at 210. The Court reasoned

that if the amended statute was in effect at the time of the defendant's conviction, "it was unlikely . . . that the license forfeiture would have occurred." Id. at 215. It noted the "substantial differences" between the prior and revised statute, and "particularly the replacement of the mandatory revocation of the license with the provision for exercise of discretion by the trial judge," warranted "further consideration" by the sentencing court consistent with the Legislature's finding that the "circumstances of each case should play an important role" in the suspension of driving privileges for drug use. Id. at 215–16. In light of that legislative intent, the Court concluded automatic suspension under the circumstances would "seem to be unjust." Ibid.

The equitable considerations at issue in the Smith decision simply are not present here. Unlike in that case, the Legislature's intent here was clear—the lesser penalties associated with the amended refusal statute apply only to offenses occurring after a specified date. We find nothing inequitable, or unfair, about an informed legislative decision to punish a defendant consistent with the penalties in effect when he or she refuses to consent to testing.

Affirmed. The Law Division's stay shall be dissolved within fifteen days from the date of this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION